*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBIN and LEONARDO SELVAGGI, | Civil Action No. 22-00708 (FLW) |
| Plaintiffs, | |
| v. | **OPINION** |
| BOROUGH OF POINT PLEASANT BEACH, *et al.*, | |
| Defendants. | |

**WOLFSON, Chief Judge:**

This matter comes before the Court by way of Verified Complaint and Order to Show Cause seeking temporary restraints, filed by Plaintiffs, Robin Selvaggi ("Robin") and Leonardo Selvaggi ("Leonardo") (collectively, "Plaintiffs") in connection with the passage of Ordinance No. 2021-33 (the "Ordinance") by Defendants, Borough of Point Pleasant Beach and the Point Pleasant Beach Borough Council (collectively, "Defendants" or the "Borough"). Specifically, Plaintiffs seek to temporarily restrain Defendants' enforcement of the Ordinance, which is intended "to curtail, and in certain circumstances prohibit, the increasingly widespread practice of renting or leasing various types of dwellings, or segments thereof, located primarily in residential neighborhoods, on a short-term basis to transient guests."

For the reasons set forth below, Plaintiffs' Order to Show Cause is **GRANTED**, in part. The Court issues only a limited injunction, enjoining the Ordinance's overbroad definition of the term "Rental," which, as drafted, infringes on Plaintiffs' fundamental right to privacy under the New Jersey Constitution. Specifically, applying the principles of severance, the Ordinance's

1

definition of "Rental" shall be limited to "the use of a residence by someone other than the owner where funds are transferred for said use."

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On November 23, 2021, the Borough Council introduced, and approved, the Ordinance on first reading. The Ordinance purportedly combines and revises Chapters 13 and 27 of the Borough Code to regulate the short-term rental of properties within the Borough. According to the Borough, its purpose for enacting the Ordinance is to "regul[ate] […] short term rentals," to prohibit "home sharing activities," such as Airbnb, and to "maintain the quality of life in residential neighborhoods[.]" (Def. Supp. Br., 10.) Specifically, the Ordinance, which prohibits rentals of less than seven days in the summer season and rentals for less than one month in the winter season, provides, in part:

**§ 13-14 Duration of Rentals**

**§ 13-14.1 Purpose and scope.**

A. This section aims to curtail, and in certain circumstances prohibit, the increasingly widespread practice of renting or leasing various types of dwellings, or segments thereof, located primarily in residential neighborhoods, on a short-term basis to transient guests. This practice has been popularized and facilitated by various websites that advertise and broker these rentals. Left unregulated, this practice will transform many residential dwellings into a detriment to the health, safety, and quiet enjoyment of the affected neighborhoods.

This section does not apply to lawfully established and operating hotels, motels, rooming houses, boardinghouses, and bed-and-breakfast establishments.

Notwithstanding the provisions this Chapter, no rental shall be permitted without obtaining a required certificate of occupancy and license prior to occupancy.

**§ 13-14.2 Short-term rentals prohibited.**

No dwelling, or segment thereof, may be rented or leased for a term of less than month.

### § 13.14-3. Exceptions for seasonal short-term rentals.

Notwithstanding the restriction set forth above, minimum rentals of seven days or more of a dwelling unit are permitted during the period from May 15 through September 30.

### § 13-14.5 Exceptions for owner occupied

Notwithstanding the restrictions set forth above owner occupied multi-unit dwellings shall have no duration restrictions if the owner personally resides in one of the units during the time of the tenancy.

### § 13-14.6 Exceptions for previous use

Notwithstanding the restrictions set forth above residents of Point Pleasant Beach who own more than one home in Point Pleasant Beach during any period the resident is actually present and living in Point Pleasant Beach from September 30th to May 15th owner shall have no duration restrictions, provided that the unit to be rented was owned by the resident on or before the effective date of this Ordinance.

Notably, the Ordinance defines "Rental" to "include the use of a residence by someone other than the owner *even though no funds are transferred for said use*." (*See* Ordinance No. 2021-33, § 13-2) (emphasis added).

Two weeks later, on December 7, 2021, the Council adopted the Ordinance on second and final reading.

On January 24, 2022, Plaintiffs, who reside in California but own residential properties in the Borough, filed a Verified Complaint in the Superior Court of New Jersey, Law Division, Ocean County, alleging the following five causes of action:

1. Ordinance No. 2021-33 is arbitrary, capricious, and unreasonable (Count One);
2. Ordinance No. 2021-33 is unconstitutional (Count Two);
3. Ordinance No. 2021-33 violates the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 (Count Three);
4. Ordinance No. 2021-33 violates the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* (Count Four); and
5. Violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 (Count Five).

As discussed more fully, *infra*, Plaintiffs claim that the Ordinance is unconstitutional and *ultra vires* because it "improperly manipulates the Borough's dynamics and demographics" in a manner that exceeds the authority granted, or even implied, by the New Jersey Legislature.

On February 9, 2022, Defendants removed this case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1441(A).[1]

## II.   LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Figueroa v. Precision Surgical, Inc.*, 423 Fed. Appx. 205, 208 (3d Cir. 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  It is well-settled that a party seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits; (2) that [it] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). All four factors must favor preliminary relief. *Lanin v. Tenafly*, 515 Fed. Appx. 114, 117 (3d Cir. 2013) (citing *Duraco Products, Inc. v. Joy Plastic Enterprises*, 40 F.3d 1431, 1438 (3d Cir. 1994)). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

## III.   DISCUSSION

At the outset, I note that Plaintiffs' basis for injunctive relief appeared to rest, at least initially, solely on their *ultra vires* claim under New Jersey state law. (Plaintiffs' Mov. Br., 7)

---

[1]     It is noted, however, that because the Verified Complaint alleges that Plaintiffs are California residents, the Court may also have diversity jurisdiction, assuming the amount in controversy exceeds $75,000.

(citing *Riggs v. Long Beach Tp.*, 19 N.J. 601, 610 (1988)) (finding that a municipality's authority exists "only insofar as it is delegated to them by the Legislature."). Following the Court's preliminary review of Plaintiffs' moving papers, it directed the parties to submit supplemental briefing addressing the injunction factors in connection with the federal claims asserted in the Verified Complaint. The Court noted that although Plaintiffs reference the alleged unconstitutionality of the Ordinance in their moving brief, those references were made in cursory fashion, and they did not provide the analysis required for the Court to conduct a meaningful review of the merits of Plaintiffs' federal claims. Moreover, the Court noted that while diversity jurisdiction might exist, in addition to federal question jurisdiction, based on Plaintiffs' residence in California, no value had been provided for the injunctive relief sought by Plaintiffs such that the Court could ascertain the amount in controversy.

On March 24, 2022, in accordance with the Court's instructions, Plaintiffs filed a supplemental brief discussing the injunction factors in connection with their federal claims, which include violations of substantive due process, equal protection, and the FHA. I will address the injunctive relief factors as to each of Plaintiffs' causes of action, including state claims, asserted in the Verified Complaint. Notably, to establish a basis for preliminary injunctive relief, Plaintiffs need not show a likelihood of success as to every claim and every allegation set forth in their Verified Complaint. *Indo-American Cultural Soc'y v. Twp. of Edison*, 930 F. Supp. 1062, 1069 (D.N.J. 1996) (noting that the Court had earlier "ruled that plaintiff had demonstrated a likelihood of success on at least one of its claims and had enjoined defendants based on that finding."); *see also Arrowhead Gen. Ins. Agency, Inc. v. Lincoln Gen. Ins. Co.*, No. 16-1138, 2016 U.S. Dist. LEXIS 83492, at *16 n.4 (M.D. Pa. June 28, 2016) ("The court need only determine that the moving party would likely succeed on at least one claim to issue injunctive relief.").

A.     Substantive Due Process Under the New Jersey and Federal Constitutions

*1.  Likelihood of Success on the Merits*

First, a party moving for a preliminary injunction has the burden to prove its likelihood of success on the merits of the case. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). "On this factor, a sufficient degree of success for a strong showing exists if there is a reasonable chance or probability, of winning" on any of Plaintiffs' claims. *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 115 (3d Cir. 2018) (internal quotation marks and citation omitted).  This is not to imply, however, that Plaintiffs must meet their ultimate burden of "a more-likely-than-not showing of success." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 n.3 (3d Cir. 2017). Rather, Plaintiffs need only establish "a reasonable probability, not the certainty, of success on the merits." *SK & F. Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1066 (3d Cir. 1980).

As to substantive due process, Plaintiffs argue that they are likely to succeed on the merits because the Ordinance is "clearly arbitrary and unreasonable, without a rational relation to the public health, safety, morals or general welfare." (Pl. Supp. Br., 4.) To illustrate their position, Plaintiffs focus on the Ordinance's "broad" definition of "Rental," which, as set forth above, includes "the **use** of a residence by someone other than the owner even though no funds are transferred for said use." (*Id.*) (emphasis in original). Plaintiffs argue that by not distinguishing between the "use" of the property, compared to "occupancy," the Ordinance, on its face, precludes an owner of residential property from allowing anyone other than the owner, from using the property for a lawful purpose. (*Id.*) According to Plaintiffs, this definition would prevent, for example, the owner's family and/or friends from "house-sitting or merely visiting." (*Id.*) Stated differently, Plaintiffs argue that "[o]n its face, [the Ordinance] requires every residential property

owner in the Borough to obtain both a rental certificate of occupancy and a rental license in order to do such normal and ordinary things as, for just one example, allowing a sibling to stay in the house for a weekend while visiting the area on business." (*Id.* at 6.) Thus, Plaintiffs contend that the Ordinance does not "set forth any legitimate public interest or purpose for such a broad infringement on the 'use' of residential property." (*Id.*)

In addition, Plaintiffs maintain that the Ordinance fails substantive due process review in other ways, including the fact that it "requires the owner of a rental property to disclose the names and permanent addresses of each proposed tenant," "separately requires that the names and permanent addresses of all who will occupy the premises during the tenancy to be listed for inspections," and "requires the landlord licensee to post on the back of the front door of the premises 'a list setting forth the full names and permanent addresses of each tenant, including the name and permanent address of each person contributing toward the cost of the rental.'" (*Id.* 6-7.) According to Plaintiffs, these required disclosures of information about tenants "violate Plaintiffs' (and their tenants') rights to privacy, in violation of substantive due process." (*Id.* at 7.)

In response, Defendants maintain simply that "the use of Plaintiffs' single-family home in a residential zone by others is subject to government regulation." (Def. Opp., 5.) In that regard, Defendants argue that Plaintiffs' right to rent their properties, either short or long-term, "is neither deeply-rooted nor sacrosanct." (*Id.*) (citing *United States v. 16.92 Acres of Land*, 670 F.2d 1369, 1373 (7th Cir. 1982) ("It is axiomatic that property rights are not absolute."). Thus, according to the Borough, because Plaintiffs cannot demonstrate that the Ordinance infringes on a fundamental right, it must only "be rationally related to a legitimate government interest, or alternatively phrased ... be neither arbitrary nor irrational" to defeat a substantive due process challenge. (*Id.* at 9) (quoting *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003)). So it follows, the Borough

argues, that regulation of short term rentals has been held to serve legitimate state interests, including to prohibit "home sharing activities," *i.e.*, Airbnb rentals, such that the quality of life in residential neighborhoods is preserved.

The Borough also addresses Plaintiffs' more pointed concerns with the Ordinance, including Plaintiffs' position that the Ordinance's definition of "Rental" is overbroad. In response, the Borough restates its position that an owner of residential property does not have a fundamental right to allow others use of the property. More specifically, the Borough argues:

> In short, because there is no prohibition on the common regulation of the use of homes by others for compensation, there is no prohibition on regulating the use of homes by other than the owner without compensation, short term or long term. There is no constitutional right to allow even family and friends to use your home without regulation. Regulations that burden this use are not infringing on a fundamental right.
>
> […]
>
> The particular regulations at issue do not prevent family and friends from using the owner's home while the owner is also there. It does prohibit short term occupancy by family and friends in the absence of the owner, just as it does when owners are compensated for identical short term use by strangers. Similarly, the regulations require inspections and licensing for use by others not the owner whether such use is compensated or not. There is nothing constitutionally deficient in such regulations. These regulations do not infringe on fundamental rights and are rationally related to legitimate government interests in preserving the health, safety, morals, and welfare of the residents, owners, renters, and visitors in the community.

(*Id.* at 13-14.)

i.  *Federal Substantive Due Process*

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." "While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833,

846–47 (1992)) ("it is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure"). The Third Circuit has "recognized that two very different threads make up the fabric of substantive due process: substantive due process relating to legislative action and substantive due process relating to non-legislative action."[2] *Id.* The Third Circuit explained this distinction in *Nicholas*:

> The first thread of substantive due process applies when a plaintiff challenges the validity of a legislative act. Typically, a legislative act will withstand substantive due process challenge if the government identifies a legitimate state interest that the legislature could rationally conclude was served by the statute, although legislative acts that burden certain fundamental rights may be subject to stricter scrutiny.

Here, Plaintiffs challenge a legislative act, *i.e.*, the Ordinance. Typically, a legislative act will withstand a substantive due process challenge if the government "identifies a legitimate state interest that the legislature could rationally conclude was served by the statute," although legislative acts that burden certain "fundamental" rights may be subject to stricter scrutiny. *Id.* (citing *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997)) (quoting *Sammon v. New Jersey Bd. of Med. Examiners*, 66 F.3d 639, 645 (3d Cir. 1995)).

Accordingly, I first consider whether the Ordinance infringes on any federal fundamental rights, such that strict scrutiny review would apply. Plaintiffs reference two potential "fundamental" rights in their application: (1) the unbridled right to use their property as a rental and (2) the right to privacy. Initially, the unilateral and unconditional "right to use property," such as the right to rent a property, is not supported by case law. A nationwide survey demonstrates that there is no such fundamental right. *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*,

---

[2]    "Executive acts, such as employment decisions, typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society." *Homar v. Gilbert*, 89 F.3d 1009, 1027 (3d Cir. 1996) (Alito, J., concurring in part and dissenting in part); *see also McKinney v. Pate*, 20 F.3d 1550, 1557 n. 9 (11th Cir. 1994).

4 F.4th 747, 758 (9th Cir. 2021); *Bowers v. Whitman*, 671 F.3d 905, 915–17 (9th Cir. 2012); *DeKalb Stone, Inc. v. County of DeKalb, Ga.*, 106 F.3d 956, 959 n. 6 (11th Cir. 1997); *Collins & Co. v. City of Jacksonville*, 38 F.Supp.2d 1338, 1342 (M.D.Fla. 1998) (granting the defendant's motion to dismiss because the right to "own, alienate, or otherwise use real property" does not fall within the set of fundamental rights protected by substantive due process under current Supreme Court jurisprudence); *Douglas v. New York State Adirondack Park Agency*, 895 F. Supp. 2d 321, 344 (N.D.N.Y. 2012), *on reconsideration in part*, 10-0299, 2012 WL 5364344 (N.D.N.Y. Oct. 30, 2012) (rejecting the plaintiffs' argument that their right to use and enjoy their property, in and of itself, constitutes a fundamental one for purposes of their substantive due process claim); *Fletcher Props., Inc. v. City of Minneapolis*, 931 N.W.2d 410, 418-20 (Minn. Ct. App. 2019) (concluding that "neither Minnesota nor the nation overall has a history of recognizing the right to rent property as a fundamental right"), *aff'd on other grounds*, 947 N.W.2d 1 (Minn. 2020); *Hills Developers, Inc. v. City of Florence, Kentucky*, 15-175, 2017 WL 1027586, at *7 (E.D. Ky. Mar. 16, 2017) (finding no recognized fundamental right to use your property "however you wish or rent your property").

Similarly, Plaintiffs provide no case law, nor could the Court locate any case, concluding that the purported over-regulation of rental properties, including the temporal limitations or the reporting provisions that require disclosure of rental tenants' personal information, infringes on a recognized fundamental privacy right <u>rooted in the federal constitution</u>.[34] Thus, the Court finds

---

[3]     In fact, at least one case reviewed in the Court's search, confirms that no fundamental right is implicated by the Ordinance's disclosure requirements. *See Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 904 (N.D. Tex. 2005) (finding that an Ordinance which requires the applicant for a rental license disclose his name, address, and driver's license number and those of the proposed tenant in a public document does not violate the applicant's right to privacy).

[4]     Nonetheless, that does not mean the Ordinance's broad definition of "Rental" could not implicate the fundamental right to privacy under the federal constitution. Rather, given the Court's ruling, *infra*,

that rational basis review applies, and the Ordinance will withstand a substantive due process challenge so long as the government "identifies a legitimate state interest that the legislature could rationally conclude was served by the statute." *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014).

Tellingly, by not arguing that the Ordinance violates rational basis, Plaintiffs seemingly have tacitly conceded this point. Indeed, I find that the Borough has legitimate interests in reducing the influx of home-sharing, through websites like Airbnb, in order to maintain the quality of life in the Borough's predominantly residential neighborhoods and reduce public nuisances. *See Nekrilov v. City of Jersey City*, 528 F. Supp. 3d 252, 282 (D.N.J. 2021) (finding ordinance that regulated home sharing and short term rentals passed rational basis review because "the City had legitimate interests in increasing the long-term housing supply and reducing public nuisances"); *Stone River Lodge, LLC v. Vill. of N. Utica*, No. 20-3590, 2020 WL 6717729, at *4 (N.D. Ill. Nov. 15, 2020) (finding ordinance regulating short term rentals was rationally related to the village's interests in protecting "life-safety concerns, quality of neighborhood and related life concerns, security concerns, fire safety concerns, and tax revenue concerns" and dismissing substantive due process claim); *Calvey v. Town Bd. of N. Elba*, No. 20-711, 2021 WL 1146283, at *12 (N.D.N.Y. Mar. 25, 2021) (dismissing substantive due process claim because a short-term rental ordinance was "rationally related to the Defendants' interest in planning how to use land in a way that balances the interests of homeowners, renters, and short term visitors"). *Murphy v. Walworth Cnty.*, 383 F. Supp. 3d 843, 851 (E.D. Wis. 2019) (finding a short-term rental ordinance that imposed a minimum stay requirement passed rational basis review because "[t]he Ordinance's stated purpose—to protect the health, safety, and general welfare of the public from seasonal over-

---

that the definition infringes on Plaintiffs' state constitutional right to privacy, I need not reach this issue on this temporary restraining order application.

occupancy—is an obvious and rational justification for the requirements imposed"); *Mogan v. City of Chicago*, No. 21-1846, 2022 WL 159732, at *15 (N.D. Ill. Jan. 18, 2022) (same).

And, as such, the Ordinance rationally furthers those interests by temporally limiting short-term rentals to at least seven days from May 15 through September 30, and at least one month during the rest of the year. In this regard, the Ordinance's intended purpose is to limit transient individuals from frequenting the predominantly residential Borough. Generally, transient visitors have little interest in maintaining the welfare of a community, and therefore, their presence may result in additional noise, waste, and other negative impacts. In addition, as it pertains to the reporting requirements, I find that the collecting and posting of certain identifying information—of both renters and tenants—is rationally related to the Borough's legitimate interest in safeguarding and protecting the community, particularly, in a beach community, like the one here, that has a significant number of short-term renters and other transient guests. Thus, because I find the Ordinance survives rational basis review, Plaintiffs' federal substantive due process claim is not likely to succeed.

    *ii.*   *State Substantive Due Process*

Notwithstanding the conclusion related to Plaintiffs' federal substantive due process claim, however, the Court agrees with Plaintiffs' position that the overbreadth of the Ordinance, as it relates to its definition of "Rental," infringes on Plaintiffs' fundamental right to privacy grounded in the <u>New Jersey Constitution</u>. Plaintiffs' state substantive due process claim arises under the NJCRA, N.J.S.A. 10:6-2(c), which provides:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under

color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

The NJCRA was adopted in 2004 "for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights[,] and to fill any gaps in state statutory anti-discrimination protection." *Ramos v. Flowers*, 429 N.J. Super. 13, 21 (App. Div. 2012) (quoting *Owens v. Feigin*, 194 N.J. 607, 611 (2008)). The elements of a substantive due process claim under the NJCRA are the same as under 42 U.S.C. § 1983, which require a claimant to "identify a 'right, privilege or immunity' secured to the claimant by the Constitution or other federal laws of the United States." *Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352, 363 (1996) (quoting 42 U.S.C. § 1983). Generally, unless fundamental rights are involved, "a state statute does not violate substantive due process if the statute reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory." *Greenberg v. Kimmelman*, 99 N.J. 552, 563 (1985). Interpreting substantive due process rights under the Fourteenth Amendment, the New Jersey Supreme Court set forth a more stringent standard: "substantive due process is reserved for the most egregious governmental abuses against liberty or property rights." *Rivkin*, 143 N.J. at 366.

First, similar to their federal substantive due process claim, Plaintiffs do not provide any support for the argument that the "right to rent property" or the "right to use property" are recognized fundamental rights under the New Jersey Constitution, such that higher scrutiny should apply.

But, Plaintiffs argue that higher scrutiny applies based on the New Jersey Appellate Division's decision in *United Property Owners Ass'n of Belmar v. Borough of Belmar*, which they claim dictates that the Ordinance's reporting and disclosure requirements infringe on Plaintiffs' fundamental right to privacy. As to this issue, however, I find that case distinguishable. There, the appellate court considered, in part, whether the trial judge erred in holding that sections of an

ordinance regulating summer rentals were an invasion of tenants' privacy based on the requirement that landlords disclose tenants' personal information. *United Property Owners Ass'n of Belmar*, 343 N.J. Super. at 50. In particular, the provisions of the ordinance in dispute required landlords to provide the names, addresses, and telephone numbers of the tenants; copies of the tenants' drivers' licenses or other identification; copies of the leases executed between the landlord and the tenant, if they were in writing; and the names and ages of any child-occupants. *Id.* Affirming the trial court's invalidation of the ordinance's provisions requiring disclosure of information about tenants and copies of leases, as a violation of the plaintiffs' and tenants' right to privacy, the Appellate Division reasoned that the defendant had "established no interest in disclosure[,]" nor has it "explain[ed] why it is necessary to review an entire lease to determine its term." *Id.* at 55. The instant Ordinance, however, is distinguishable in several critical features. First, the Ordinance only requires disclosure of the renter's name and permanent address, as well as the name and permanent address of each person contributing toward the cost of the rental—two pieces of personal information that the Appellate Division in *United Property Owners Ass'n of Belmar* found to raise only minimal privacy concerns because of their public availability. (*See* Ordinance No. 2021-33, § 13-20.) Indeed, the appellate court commented that "[n]ames, addresses, and identification do not constitute confidential or private information," while "[u]nlisted telephone numbers and leases seem more worthy of confidentiality." *United Property Owners Ass'n of Belmar*, 343 N.J. Super. at 55. (emphasis added). To be clear, the Ordinance, here, does not mandate the disclosure of any phone numbers, leases, or any other identifying personal information other than the tenant's name and permanent address. Second, Plaintiffs overlook the fact that "disclosure" of this limited and publicly available information simply requires the landlord to post the renter's identifying information on the "**back**" of the front door of the premises," along with a

copy of the rental certificate of occupancy for the property. (*See* Ordinance No. 2021-33, § 13-20) (emphasis added). Thus, the renter's name and address can only be viewed from the <u>inside</u> of the premise, not visible to the public or passersby. While the outcome might be different had the Ordinance required posting of the tenant's information on the outside of the front door of the premises, no such conclusion can be reached based on the clear and unambiguous language of Section 13-20. Accordingly, the Court does not find that the Ordinance's disclosure provision demands strict scrutiny, and the Borough has identified a legitimate, rational basis for the disclosure of the renter's name and address. In that regard, the Court recognizes the importance of the Borough having information as to who is occupying the numerous rental properties within its border. Indeed, should an emergency occur at a non-owner occupied rental property, Borough police will benefit from knowing the tenant's identity.

That said, *United Property Owners Ass'n of Belmar* supports the notion that Plaintiffs' fundamental right to privacy might be implicated by the Ordinance's overly broad definition of the term "Rental." Specifically, in another portion of the opinion, the Appellate Division disagreed with the trial court's conclusion as to the effect of an ordinance on occupancy, reversing the trial court's determination and invalidating this provision of the ordinance. 343 N.J. Super. at 32. The section of the ordinance at issue prohibited the presence of more than the permitted number of occupants in a summer rental at certain hours. *Id.* The plaintiffs challenged that provision, claiming it constitutes a curfew that infringed "on one's right to privacy, due process and equal protection," as well as that the provision was overbroad. *Id.* Although the appellate court agreed with the defendant that the ordinance did not create a curfew, it also found that the provision did not pertain to occupancy *per se*. *Id.* Rather, the court noted that "[i]t prohibits the presence of adult occupants and non-occupants alike in a summer rental when the number of people exceeds the permitted

occupancy." *Id.* at 32-33. The court explained that the ordinance contains no definition of occupancy or occupant, but the common meaning of occupant is a person who resides in a dwelling. *Id.* at 33. Further, [t]he number of residents or occupants remains the same regardless of how many people are present in the dwelling at any particular time." *Id.* Thus, the court held that "the effect of this Ordinance provision is to either exclude guests when all occupants are present or exclude occupants so that guests may be present, during the specified hours," concluding that this interfered with "summer residents' right to have visitors in their homes, a component of their right to privacy, and that it is overboard in accomplishing a legitimate municipal goal, in violation of summer residents' due process rights." *Id.*

As it relates to the summer residents' right to privacy, the appellate panel reasoned:

> We first observe that the right to have guests or visitors—non-occupants—present in one's home is not, in and of itself, a constitutional or fundamental right. However, as the United States Supreme Court has acknowledged, the right to privacy in one's home encompasses the right to host guests. In an unrelated context, the United States Supreme Court explored the relationship of social guests and privacy rights. In *Minnesota v. Olson*, 495 U.S. 91, 95–100, 110 S.Ct. 1684, 1687–90, 109 L.Ed.2d 85, 92–96 (1990), the Court held that an overnight guest had a reasonable expectation of privacy, so that a warrantless entry into the house to arrest him violated his Fourth Amendment right to freedom from an unreasonable search and seizure. The Court commented that its holding "merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society." 495 U.S. at 98, 110 S.Ct. at 1689, 109 L.Ed.2d at 94.

> […]

> [P]laintiffs and their summer tenants have no complaint about any physical intrusion into, or search of their homes. Nevertheless, their right to privacy in their homes includes the choice to share it with others.

> The right to privacy in New Jersey is expansive. It derives not only from the Search and Seizure Clause of the New Jersey Constitution, N.J. Const. art. I, ¶ 7, and New Jersey common law, but also from the "natural and unalienable rights" which all people have under Article I, Paragraph 1 of the New Jersey Constitution. N.J. Const. art. I, ¶ 1, *supra*, p. 17, 777 A.2d pp. 959–60. *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 94–99, 609 A.2d 11 (1992) (declining to decide whether

> a private employer's random urine testing of an employee for drugs violated the employee's right to privacy, but holding that "constitutional privacy protections may form the basis for a clear mandate of public policy supporting a wrongful-discharge claim"). A summer tenants' right to share their homes with guests or visitors, even when all occupants are present, is within the panoply of their right of privacy.

*Id.* at 33-34.[5] Notably, the New Jersey Supreme Court denied certification.

Consistent with the analysis set forth in *United Property Owners*, I am persuaded that a property owner's right to share his or her home with guests or visitors is within the panoply of their right of privacy under the New Jersey Constitution, and therefore, the Ordinance is subject to strict scrutiny. "Where fundamental rights or interests are involved, a state regulation limiting these fundamental rights can be justified only by a compelling state interest and legislative enactments must be narrowly drawn to express only the legitimate state interests at stake." *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997) (citing *Roe v. Wade*, 410 U.S. 113, 154 (1973)). "To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). Therefore, "state limitations on a fundamental right such as the right of

---

[5]     The appellate panel expressly noted, "[t]he analysis of fundamental rights under the New Jersey Constitution differs from analysis of those rights under the United States Constitution." *United Prop. Owners Ass'n of Belmar*, 343 N.J. Super. at 17 (citing *Greenberg*, 99 N.J. at 567). In that regard, it explained that "[o]ur analysis of this issue requires application of a balancing test, considering 'the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction.'" *Id.* (quoting *Greenberg*, 99 N.J. at 567). "In striking the balance .... the more personal the right, the greater the public need must be to justify governmental interference with the exercise of that right." *George Harms Constr. Co. v. New Jersey Tpk. Auth.*, 137 N.J. 8, 29 (1994). In addition, the factors to be balanced are "implicit, if not explicit, in federal analysis of the due process and equal protection clauses." *Greenberg*, 99 N.J. at 567.

privacy are permissible only if they survive strict constitutional scrutiny." *Id.* (citing *Planned Parenthood*, 505 U.S. at 929) (Blackmun, J., dissenting).[6]

As discussed above, here, the Borough's purpose for enacting the Ordinance is to "regul[ate] […] short term rentals," to prohibit "home sharing activities," such as Airbnb, and to "maintain the quality of life in residential neighborhoods[.]" (Def. Supp. Br., 10.) Specifically, the Ordinance provides:

> This section aims to curtail, and in certain circumstances prohibit, the increasingly widespread practice of renting or leasing various types of dwellings, or segments thereof, located primarily in residential neighborhoods, on a short term basis to **transient** guests. This practice has been popularized and facilitated by various websites that advertise and broker these rentals. Left unregulated, this practice will transform many residential dwellings into a detriment to the health, safety, and quiet enjoyment of the affected neighborhoods.

Ordinance No. 2021-33 (emphasis added). Prohibiting a property owner's ability to allow friends and/or family to use their homes, free of rent, appears to conflict with the stated purpose of the Ordinance. As the Ordinance is currently drafted, for example, property owners in the Borough cannot invite friends or family to use their homes for a weekend—even in the summer months— unless the owners are also present. In the Court's view, such a prohibition "shocks the conscience." The Ordinance is intended to limit <u>transient</u> individuals, namely those using home sharing websites who have no connection to the Borough or its residents, from threatening the residential nature of the local community through excessive noise, trash, and other disorderly behavior. Preventing property owners in the Borough from inviting their family members to stay at their home when

---

[6]  The Court notes that, as explained above, *infra*, claims under the federal and New Jersey constitutions are analyzed by utilizing essentially the same balancing test. *Greenberg v. Kimmelman*, 99 N.J. at 567; *see also Matter of Am. Reliance Ins. Co.*, 251 N.J. Super. 541, 552–53 (App. Div. 1991) ("'[O]ur principles of state constitutional analysis in this area are substantially the same' as their federal counterparts.") (quoting *Drew Associates of NJ, LP v. Travisano*, 122 N.J. 249, 259 (1991)).

they are not present does not comport with that purpose. Rather, friends and family of property owners will be more conscientious and respectful of the community given their direct connection to the Borough through the property owner. If the purpose of the Ordinance is truly to curb the influx of online rental services that require the exchange of money between renter and owner, then the broad definition of "Rental," that includes guests who do not transfer funds to the owner, does not advance the Ordinance's purpose. Thus, applying the strict scrutiny standard, the Court finds that the definition of "Rental" is so untethered from the Borough's purpose in enacting the Ordinance that Plaintiffs have demonstrated a likelihood of success on the merits of their state substantive due process claim.

2. *Remaining Preliminary Injunction Factors*

In addition to whether the movant has shown a reasonable probability of success on the merits, the remaining preliminary injunction factors are: (1) whether the movant will be irreparably injured by denial of the relief; (2) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (3) whether granting the preliminary relief will be in the public interest. *Crissman v. Dover Downs Entertainment Inc.*, 239 F.3d 357, 364 (3d Cir. 2001). I find that Plaintiffs have met these remaining factors.

With respect to irreparable harm, courts have found that "'an alleged constitutional infringement will often alone constitute irreparable harm.'" *Ass'n for Fairness in Bus., Inc. v. New Jersey*, 82 F. Supp. 2d 353, 363 (D.N.J. 2000) (citing *Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997)) (citation omitted). Consequently, given my ruling related to Plaintiffs' likelihood of success on the merits of their substantive due process claim under the New Jersey Constitution, *infra*, I find that they will suffer immediate irreparable injury from the denial of their request for a preliminary injunction.

Finally, as to the balancing of the equities and public interest factors, Plaintiffs claim that the harm to them is "obvious" and substantial public interest exists in having municipalities "abide by the well-recognized limitations on arbitrary, capricious and unconstitutional restrictions that impinge upon Plaintiffs' fundamental rights." (Plaintiffs' Mov. Br., 16; Plaintiffs' Reply Br., 8.) I agree. Specifically, as to balancing of the equities, Plaintiffs' rights will be irreparably harmed if an injunction is not issued, while on the other hand, the Borough will face only minimal hardship should the Court impose restraints. (*Id.*) Moreover, should there be any improper behavior committed by non-paying friends and family of property owners within the Borough, the Borough's police department is well-equipped to handle those issues (*e.g.*, noise, nuisance, parking, trash) through the enforcement of existing ordinances and laws.

### 3. Remedy

Having determined that Plaintiffs have satisfied the requirements for limited injunctive relief based on their New Jersey Civil Rights Act claim (Count Five) for violation of Plaintiffs' substantive due process rights under the New Jersey Constitution, I turn to the remedy. "When remedying a statutory scheme's constitutional infirmities, this Court looks to state law to determine whether to sever the offending language." *Freeman v. Fischer*, 563 F. Supp. 2d 493, 506–07 (D.N.J. 2008), *aff'd in part*, *vacated in part*, *rev'd in part sub nom. Freeman v. Corzine*, 629 F.3d 146 (3d Cir. 2010) (citing *Old Coach Dev. Corp. v. Tanzman*, 881 F.2d 1227, 1234 (3d Cir. 1989)) ("Issues of severability are generally issues of state law.")

"Pursuant to N.J.S.A. 1:1–10, a court has the power to declare a portion of a statute unconstitutional, while leaving the remainder of the law intact." *L. Feriozzi Concrete Co., Inc. v. Casino Reinvestment Development Authority*, 342 N.J. Super. 237, 251 (App. Div. 2001). N.J.S.A. 1:1–10 gives rise to a presumption of severability that may be overcome only where the offending

20

provisions are essential to the overall legislative plan. *Inganamort v. Ft. Lee*, 72 N.J. 412, 422 (1977). "The crucial inquiry is whether the legislature intended that the statute should stand or fall as a unitary whole. Legislative intent, in turn must be determined on the basis of whether the objectionable feature of the statute can be excised without substantial impairment of the principal object of the statute." *Old Coach Dev. Corp.*, 881 F.2d at 1234 (internal quotation marks and citations omitted). "In appropriate cases, therefore, a court may engage in "judicial surgery" to excise a constitutional defect or engraft a needed meaning." *Right to Choose v. Byrne*, 91 N.J. 287, 311 (1982) (citing *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n*, 82 N.J. 57, 75 (1980)) (limiting election financing reporting act to avoid overbreadth problem); *see also Collingswood v. Ringgold*, 66 N.J. at 357 (1975) (limiting an ordinance requiring prior registration of canvassers and solicitors to door-to-door activity on private property); *State v. DeSantis*, 65 N.J. 462, 473 (1974) (adding notice and warning requirement to obscenity statute); *Camarco v. City of Orange*, 61 N.J. 463, 466 (1972) (limiting broad anti-loitering ordinance to interferences with others in public places or threats of immediate breach of peace).

Put another way, "[b]efore performing judicial surgery to save a particular enactment, a court must determine whether, considering the particular defect involved, the legislative body in question would prefer to have the enactment survive as corrected or die." *Torres v. Mun. Council of City of Paterson*, A-0781-05, 2007 WL 1712707, at *8 (N.J. Super. Ct. App. Div. June 15, 2007) (citing *Chamber of Commerce v. State*, 89 N.J. 131, 152 (1982)). As Justice Pashman noted in his dissenting opinion in *Chamber of Commerce*:

> One of the key considerations is the extent to which the court must intervene to save a statute. Where the court can uphold the enactment by giving its language a narrow interpretation consistent with its purpose, judicial activism is more readily justified. Similarly, if the infirmity can be cured by merely excising a particular

sentence or phrase, "judicial surgery" is more appropriate. However, where the necessary modification entails the addition of qualifying language, the court should be extremely reluctant to proceed, for there it usurps the legislative function.

89 N.J. at 187 (Pashman, J. dissenting).

Notably, here, the Ordinance contains a severance clause which provides:

In the event any section, part or provision of this Ordinance shall be held unconstitutional or invalid by any Court, such holding shall not affect the validity of this Ordinance or any remaining part of this Ordinance other than the part held unconstitutional or invalid.

The presence of such a clause raises, at the minimum, a rebuttable presumption of severability.

*Helmsley v. Borough of Fort Lee*, 78 N.J. 200, 237 (1978), *appeal dismissed*, 440 U.S. 978 (1979),

*clarified*, 82 N.J. 128 (1980).

Consequently, the Court narrowly enjoins the Ordinance's definition of "Rental," and further orders that the definition be modified to correct the deficiencies outlined above, *supra*. Specifically, the definition currently reads: "the use of a residence by someone other than the owner even though no funds are transferred for said use." Applying the principles of severance and "judicial surgery," however, for the purposes of the preliminary injunction, the Ordinance's revised definition of "Rental" should read: "the use of a residence by someone other than the owner where funds are transferred for said use."

B.     Ultra Vires

Next, I consider Plaintiffs' state law *ultra vires* claim, beginning with its likelihood of success. In connection with this claim, Plaintiffs argue that although municipalities are "empowered to regulate the physical use of property," they have "no right or authority to regulate the identity of occupants or to preclude an owner from a substantial attribute of ownership, such as the ability to rent their properties." (*Id.*)

In support, Plaintiffs rely predominantly on *Repair Master, Inc. v. Bor. of Paulsboro*, 352 N.J. Super. 1, 3 (App. Div. 2002), in which the New Jersey Appellate Division considered the power of a municipality to place a <u>moratorium</u> on the issuance of licenses for residential rental properties. In 1997, the Borough of Paulsboro adopted an ordinance authorizing licensing of residential real estate to ensure "proper maintenance" and "to protect the lives and property of the Borough residents." *Id.* Several years later, the Paulsboro adopted a resolution that established a moratorium on the issuance of new rental licenses for single-family detached and single-family attached residences, and for "any other rental property not having one or more units occupied by the owner." *Id.* at 4. Without addressing the validity of the underlying licensing ordinance, the appellate panel ruled that the moratorium "is arbitrary, unreasonable, and does not address appropriately the legitimate concern of the municipality." First, the Appellate Division considered "the basic premise that a municipal corporation may exercise only the power conferred on it by the Legislature." *Id.* at 8.  In that connection, the court explained that N.J.S.A. 40:48–1 sets forth thirty-one areas in which express powers are granted to the governing body of every municipality to make, amend, repeal and enforce ordinances; however, "none are granted for the <u>prohibition</u> on rental of real property for social reasons." *Id.* at 9 (emphasis added).  Next, the appellate panel also considered a list, provided by Paulsboro, of an additional twenty-two judicially-approved municipal regulatory ordinances based on the exercise of implied power, not expressly granted by any enabling act. Although the appellate court found the non-exhaustive list of implied powers for municipal regulation "impressive," it stated that neither the express list nor the implied list of powers "suggest the power to <u>ban</u> a class of housing occupants or deny an owner a substantial attribute of ownership and possession of real estate." *Id.* at 10 (emphasis added).

Here, the instant case is distinguishable from *Repair Master*, in that the Ordinance does not impose an outright ban on rental properties within the Borough.[7] Indeed, the appellate panel in *Repair Master* emphasized that municipal moratoria are generally disfavored as a means of either controlling land use or the nature of occupancy. The Ordinance, here, allows Plaintiffs to rent their properties; however, they must do so for at least seven days at a time in the summer, and at least one month in the winter. In addition, property owners are free to have renters for any duration so long as the owners are also present. These types of limited temporal restrictions to rental properties are authorized by the Licensing Act—a point that Plaintiffs concede. (Pl. Reply Br., 3) (conceding that "municipalities have the authority to license seasonal leases"). In that regard, while the Court agrees with Plaintiffs that such authority is not unbridled, the Ordinance remains squarely within the limits of the Licensing Act, which provides, in pertinent part:

> The governing body may make, amend, repeal and enforce ordinances to license and regulate:
>
> ....
>
> d. Hotels, boardinghouses, lodging and rooming houses, trailer camps and camp sites, motels, furnished and unfurnished rented housing or living units and all other places and buildings used for sleeping and lodging purposes, and the occupancy thereof, restaurants and all other eating places, and the keepers thereof;
>
> ....
>
> n. The rental of real property for a term less than 175 consecutive days for residential purposes by a person having a permanent place of residence elsewhere.

N.J.S.A. 40:52–1. *See United Property Owners Association of Belmar*, 343 N.J. Super. at 32 (upholding the scope of an ordinance regulating summer beach rentals, based on legislative authority, including N.J.S.A. 40:52–1(n)). Indeed, the Legislature's primary purpose in enacting

---

[7]     To the extent that Plaintiffs also rely on *Tirpak v. Borough of Point Pleasant Beach Bd. of Adjustment*, 457 N.J. Super. 441, 443 (App. Div. 2019), that case is similarly distinguishable. *Tirpak* concerned the enforceability of a variance provision and associated deed restriction which required one unit of the subject two-family dwelling to be occupied by the owner and not rented to a third-party tenant, which differs from the temporal restrictions of rentals imposed by the Ordinance at issue here.

the Licensing Act was to "authorize municipalities to license and regulate, as police measures for the public health, safety, morals or welfare, the local businesses described therein, and only incidentally to impose on the businesses thus licensed and regulated license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs." *Salomon v. Jersey City*, 12 N.J. 379, 390 (1953). Therefore, a municipality's exercised licensing and regulatory authority "cannot be an arbitrary exertion of th[at] power," *Ring v. N. Arlington*, 136 N.J.L. 494, 497 (Sup.Ct.), *aff'd o.b.*, 1 N.J. 24 (1948), nor can the exercise be unreasonable, *Indep. Warehouses v. Scheele*, 134 N.J.L. 133, 136 (E. & A.1946), *aff'd*, 331 U.S. 70 (1947).[8] Accordingly, the Court finds that Plaintiffs' *ultra vires* claim is unlikely to succeed on the merits.

The Court finds it necessary, however, to highlight discrete allegations in Plaintiffs' Verified Complaint which might suggest the Ordinance's creation of a moratorium on short term rentals when practically applied. The Ordinance requires that upon filing of an application for a rental certificate of occupancy and/or rental license, the Borough shall conduct an inspection of the premises within thirty days. (Verified Complaint ¶37.) The Ordinance also requires that all rentals must be inspected at least once every three years, and for rentals of a year or more, upon a change of occupancy. (*Id.* at ¶38.) Lastly, rental certificates of occupancy and rental licenses purportedly expire on December 31 of the year issued, unless a tenancy is for more than one year,

---

[8]     I also note that when reviewing a municipal action, New Jersey courts apply a presumption of validity and reasonableness to adopted ordinances. *Lake Valley Assocs., LLC v. Twp. of Pemberton*, 411 N.J. Super. 501, 505 (App. Div.), *certif. denied*, 202 N.J. 43 (2010); *see also First Peoples Bank v. Twp. of Medford*, 126 N.J. 413, 418 (1991) ("[A] reviewing court should presume the validity and reasonableness of a municipal ordinance."). The New Jersey Supreme Court has advised that courts should refrain from "pass[ing] on the wisdom of the ordinance; that is exclusively a legislative function." *Pheasant Bridge Corp. v. Twp. of Warren*, 169 N.J. 282, 290 (2001), *cert. denied*, 535 U.S. 1077 (2002). A party challenging an ordinance must demonstrate the ordinance, "in whole or in application to any particular property," is arbitrary, capricious or unreasonable. *Id.* at 289–90 (citation and internal quotation marks omitted). Therefore, the "presumption of validity [cannot] be overcome unless the evidence clearly establishes its unreasonableness." *Twp. of Livingston v. Marchev*, 85 N.J. Super. 428, 432 (App. Div. 1964) (citing *Vickers v. Twp. Comm. of Gloucester Twp.*, 37 N.J. 232, 242 (1962)), *certif. denied*, 44 N.J. 412, *appeal dismissed*, 382 U.S. 201 (1965).

in which case the rental certificate of occupancy expires after three years. (*Id.* at ¶39) (citing the Ordinance at § 13-9(f) and (g).) Importantly, however, Plaintiffs claim that "[n]otwithstanding the provisions in Section 13-9.f and g, the ordinance also provides that the rental 'certificate of occupancy and/or license will expire on December 31 of the year issued, or until a change in occupancy occurs, whichever occurs first.'" (*Id.* at ¶40) (quoting the Ordinance at § 13-11.) Thus, according to Plaintiffs, the Ordinance seemingly requires a new application, and a new inspection, upon every change in tenancy for rentals less than one year in duration. Because inspections are conducted within thirty days after filing of a new application, the practical effect is that short-term rentals, i.e., a minimum of seven days, between May and September, may be impossible due to the lack of timely inspections. However, while these allegations raise red flags, Plaintiffs have not set forth sufficient facts as to how, and when, the Borough conducts these particular inspections to meet its burden of demonstrating a likelihood of success on the merits.

In addition, I note that even if Plaintiffs could demonstrate a likelihood of success on the merits of their *ultra vires* claim, they cannot show irreparable harm. Plaintiffs argue that they will suffer irreparable harm in the absence of an injunction because the Ordinance "infringes on their property rights" by restricting and prohibiting their ability to rent their homes. Besides this wholly conclusory statement, however, that "monetary damages cannot redress" these injuries, Plaintiffs fail to show how, if the Court were to rule in their favor on this claim, money damages for lost rental income would not suffice. *Tate v. Schember*, 809 Fed. Appx. 64, 66 (3d Cir. 2020) (denying injunctive relief where the plaintiff failed to show that his injuries were an exception to the rule that injuries capable of being redressed by monetary damages are usually not irreparable); *Kravco Co. v. Valley Forge Ctr. Associates*, 91-4932, 1991 WL 225070, at *15 (E.D. Pa. Oct. 29, 1991) (denying injunctive relief where the only evidence of harm suffered by the plaintiffs was lost rental

income and other alleged harm compensable in money damages). Indeed, a trier of fact could use Plaintiffs' rental income from the properties in prior years as a baseline, and then consider that baseline in conjunction with evidence of market rates for other comparable rental homes in the Borough and other neighboring towns. Plaintiffs do not contend that their home is so unique or unusual that it cannot be compared to other homes in the rental market. Accordingly, because the Court finds that Plaintiffs' *ultra vires* claim is unlikely to succeed on the merits and, even if it could succeed, money damages are an appropriate form of redress, it cannot form the basis for injunctive relief.

       C.    <u>Remaining Claims</u>

Finally, I turn to Plaintiffs' remaining claims, which include violations of procedural due process, equal protection, and the FHA. Because I find that none of these claims are likely to succeed on their respective merits, I do not discuss the remaining injunction factors. *ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 Fed.Appx. 727, 730-32 (3d Cir. 2009); *Jorgensen & Co. v. Sutherland*, 15-7373, 2016 WL 3574326, at *3 (D.N.J. June 30, 2016) (finding that because the plaintiff's failure to show a likelihood of success on the merits was fatal to its preliminary injunction motion, the court did not need to consider the remaining injunction factors); *Amede v. Ortiz*, 20-7206, 2020 WL 6779134, at *3 (D.N.J. Nov. 18, 2020) (same).

       *1.  Procedural Due Process*

According to Plaintiffs, their procedural due process claim "do[es] not relate to the manner or process by which the subject Ordinance was adopted." (Pl. Supp. Br., 10.) Rather, Plaintiffs have identified several specific provisions of the Ordinance that they claim "unfailingly constitute a profound lack of process in connection with the deprivation of a fundamental property right." (*Id.*) Procedural due process claims are subject to a two-stage analysis: (1) are "the asserted

individual interests ... encompassed within the fourteenth amendment's protection of 'life, liberty, or property[]' " and (2) do the procedures available provide a plaintiff whose interests are deprived "due process of law?" *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984). Remedial procedures are constitutionally inadequate if they "contain a defect so serious [as to] characterize the procedures as fundamentally unfair." *Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 690 (E.D. Pa. 2017). " '[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body.' " *Giuliani v. Springfield Twp.*, 726 Fed. Appx. 118, 122 (3d Cir. 2018). "Thus, 'when a state affords a full judicial mechanism with which to challenge the administrative decision in question,' [it] provides adequate procedural due process, whether or not the plaintiff avails himself or herself of the provided appeal mechanism." *Id.*; *see also Custin v. Wirths*, 2020 WL 1466352 at *7, 2020 U.S. Dist. LEXIS 52318 at *20 (D.N.J. Mar. 25, 2020); *DeBlasio v. Zoning Bd. of Adjustment for Twp of West Amwell*, 53 F.3d 592, 597 (3d Cir. 1995).

Specifically, Plaintiffs argue that in order to obtain a rental certificate of occupancy, the Ordinance requires an applicant to provide a written statement "that there have been no prior revocations or suspensions of the license, and that there are no pending open complaints awaiting a hearing." (*See* Ordinance No. 2021-33, § 13-8.a.) If there has been a revocation, suspension "or violation," or if there is a pending complaint, then the Ordinance requires the Construction Code Official to deny the application and not issue the certificate or license. (*Id.*) Further, while the Ordinance does not define "complaint," it does provide that in addition to various code and law enforcement officials, any taxpayer or resident of the Borough may make a complaint. (*See* Ordinance No. 2021-33, § 13-24.) Plaintiffs contend that this section of the Ordinance is impermissibly vague, arbitrary, capricious and unreasonable, taking particular issue with the fact

that "any informal complaint or grievance by any person, whether based in fact or not, and whether known or unknown to the applicant, could cause the applicant to run afoul of the provisions of the ordinance." (Pl. Supp. Br., 11.) As another example, Plaintiffs highlight the Ordinance's requirement that all applicants for rental certificates of occupancy and rental licenses have permanent addresses in the Borough, thus requiring non-resident owners to utilize only local (*i.e.*, located in the Borough) agents for the application and issuance of licenses.

Defendants counter that while the Ordinance does in fact require the denial of a rental certificate of occupancy and/or a rental license if there are "pending or open complaints[,]" (Def. Supp. Br., 19), nonetheless, that there is nothing vague about this provision. Rather, Defendants argue that the complaints, which are "for violations of the Ordinance," can be corrected by the property owner by paying a fine, or they may contest the complaint. (*Id.*) According to Defendants, the Ordinance "merely requires that the landlord resolve any outstanding complaints before being permitted to continue," and therefore, "[s]uch a regulation has the same obvious relation to the health, safety, and welfare of the tenants, landlords and surrounding neighbors as has the other sections" of the Ordinance challenged by Plaintiffs. (*Id.*) In addition, Defendants claim that the procedures provided by the Ordinance are adequate. (*Id.* at 20-21.)

First, I consider whether Plaintiffs have sufficiently alleged a protected property interest. While their briefing is hardly a model of clarity or precision on this point, it appears that Plaintiffs claim that refusal to issue a rental certificate of occupancy, rental certificate, or rental license constitutes a deprivation of their property interest. In that regard, I look to state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985) ("Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....' " (quoting *Bd. of Regents of State Coll.'s*

*v. Roth*, 408 U.S. 564, 577 (1972))). Stated differently, "[a] property interest subject to protection by the due process clause results from a "legitimate claim of entitlement" created by an independent source such as state law." *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 679 (3d Cir. 1991), *abrogated by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003).

Plaintiffs fail to demonstrate, however, any "legitimate claim of entitlement to" a rental certificate of occupancy under New Jersey law. They point to no statute, nor provide any case law to support the notion that a rental certificate of occupancy may be treated as a property interest. Indeed, the purpose of a rental certificate of occupancy requirement is to protect the health and safety of the occupier, *see Cona v. Twp. of Washington*, 456 N.J. Super. 197, 206 (App. Div. 2018), and such a requirement is imposed by the township or municipality in connection with its police power to regulate rentals, which I have already determined is a legitimate exercise of that power. In that regard, a residential property owner, seeking to rent his property to guests, would not, as a constitutional matter, have a "legitimate claim of entitlement" to a rental certificate of occupancy. As such, "[t]here cannot be a due process violation claim when the claimant has no valid property interest." *Ruiz v. New Garden Twp.*, 376 F.3d 203, 214 (3d Cir. 2004).

Moreover, even if Plaintiffs could demonstrate a property interest, their procedural due process claim still fails because it has a low likelihood of success on the merits. Although Plaintiffs classify their claim as a challenge to the lack of process afforded to them by the Ordinance, their claim appears more akin to a disagreement with the language and specificity of the Ordinance, *i.e.*, the meaning of "complaint." In this regard, Plaintiffs do not provide an analogous case or legal citation to support that the Ordinance can be challenged in this way under procedural due process. Rather, I highlight the court's decision in *Nekrilov*, a case that I find instructive. There, a group of

30

landlords located in Jersey City, New Jersey, challenged an ordinance that, among other things, banned the practice of subletting long-term lease properties as short-term rentals and limited non-owner-occupied properties to hosting no more than sixty nights of short-term rentals per year. 528 F. Supp. 3d at 260-61. Seeking an injunction and monetary damages, the plaintiffs brought suit against the city, asserting a variety of federal constitutional claims, including a violation of procedural due process claim. *Id.* In dismissing this claim, however, the court explained that "[t]he model of procedural due process is a poor fit for a challenge to the <u>substance</u> of a municipal ordinance of general applicability[,]" because New Jersey law "provides that courts may review New Jersey municipal ordinances pursuant to Article VI, Section V, paragraph 4 of the New Jersey Constitution." *Id.* at 283 (emphasis added) (citing *Hills Development Company v. Bernards*, 103 N.J. 1, 44–45 (1986). The same situation presents itself, here, where Plaintiffs attempt to challenge the <u>substance</u> of the Ordinance through an improper procedural due process claim.

Moreover, even assuming Plaintiffs assert a proper procedural due process claim, which contests the actual process afforded by the Ordinance, their claim fails. First, Plaintiffs' argument regarding "informal complaints" is belied by the language of the Ordinance, which provides that only certain complaints, including those issued by the Borough's Code Enforcement Officer; the Borough Chief of Police; any police officer of the Borough; or any taxpayer or resident of the Borough, which are "awaiting a hearing" can delay issuance of a rental certificate of occupancy. The Court interprets "complaint" consistent with its usage and meaning as provided in the Ordinance, and only these forms of complaints may trigger the requirements of the Ordinance; informal complaints are not incorporated therein. Indeed, the Ordinance provides that following a complaint, notice of a hearing for the revocation or suspension of a license granted or issued pursuant to Chapter 13 of the Borough's Code "shall be given in writing by the Borough Clerk or

the Code Enforcement Officer, setting forth specifically the grounds of complaints and the time and place of the hearing." (*Id.* at § 13-23(a).) The Ordinance explains that the hearing is to be held before a hearing officer designated by the Borough's Governing Body, and that a person convicted of a violation under Chapter 13, may be subject to certain fines and penalties as set forth under N.J.S.A. 40:49-5. (*Id.* at §§ 13-23(b) and 13-26(a).) In addition, the "property owner shall be denied a Certificate of Occupancy and a license for all rental properties in which any of the owners or their principles have an interest" for two-year period. (*Id.* at § 13-26(c).) Notably, Plaintiffs do not contest that any fines levied in connection with this Ordinance could be appealed. *See Nekrilov*, 528 F. Supp. 3d at 260-61 (noting that any fines issued by the municipality pursuant to the ordinance in question, could be appealed to the New Jersey Law Division under New Jersey Court Rules 7:13-1 and 3:23-1) (citing *State v. Diaz*, 2008 WL 4345847 at *1, 2008 N.J. Super. Unpub. LEXIS 244 at *3 (N.J. App. Div. Sept. 25, 2008)). In sum, I do not find a likelihood of success on Plaintiffs' procedural due process claim.

### 2. Equal Protection

With respect to equal protection, Plaintiffs claim that their property rights, specifically the right to "unrestricted use and enjoyment and to receive rents," are fundamental rights "of historic and continuing importance." (Pl. Supp. Br., 12.) In that regard, Plaintiffs argue that "[b]y creating classifications among residential property owners as to who, when and how they may rent their properties, Defendants have unfairly and inequitably burdened Plaintiffs' fundamental property rights." (*Id.* at 12-13.) Indeed, Plaintiffs claim that their ability to rent their properties is "burdened by their classification as non-residents and/or non-owner-occupiers." (*Id.* at 13.) According to Plaintiffs, their same properties, if owned by a resident or an owner-occupier, could be rented with "few or none of the same arbitrary and unreasonable restrictions." (*Id.*)

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A plaintiff raising an equal protection claim "must present evidence that s/he has been treated differently from persons who are similarly situated." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (internal citation omitted). In other words, a plaintiff must allege that (1) he/she is a member of a protected class; (2) was treated differently from similarly situated individuals; and (3) the disparate treatment was based on his/her membership in the protected class. *See Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019); *see also Mascio v. Mullica Twp. Sch. Dist.*, No. 16-206, 2016 WL 4880511, at *3 (D.N.J. Sept. 13, 2016); *see also Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992). Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Specifically, the plaintiff must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

First and foremost, the Court has already determined that there is no fundamental right to rent property. *See*, *infra*, Substantive Due Process. Similarly, Plaintiffs do not claim that the Ordinance discriminates against a recognized protected class.  As such, Plaintiffs' equal protection claim could only succeed under a "class of one" theory. *Lock Haven Prop. Owners' Ass'n v. City of Lockhaven*, 911 F. Supp. 155, 161 (M.D. Pa. 1995) (finding a city ordinance governing inspection of non-owner occupied rental property did not involve any discernible fundamental interest and did not impact any protected class). Pursuant to the "class of one" theory set forth by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), "a plaintiff must

allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *see also Mosca v. Cole*, 217 Fed. Appx. 158, 164 (3d Cir. 2007); *Harris v. New Jersey*, No. 03-2002, 2008 WL 141503, at *10 (D.N.J. Jan. 14, 2008).

Here, Plaintiffs do not allege, however, that they are somehow treated differently by the Ordinance compared to others similarly situated, *i.e.*, other property owners within the Borough. To be similarly situated, parties must be "alike in all relevant aspects." *Perano v. Township of Tilden*, 423 Fed. Appx. 234, 238 (3d Cir. 2011) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)). Indeed, Plaintiffs do not allege that they are the only residents subject to the Ordinance, or that other property owners who are not residing at the property within the Borough are not subject to the same temporal limitations as it relates to their ability to rent their properties. Rather, based on the face of the Ordinance, all property owners within the Borough are subject to its rental restrictions, and therefore, Plaintiffs cannot assert a successful "class of one" equal protection claim.[9] Thus, because Plaintiffs cannot show a likelihood of success on the merits of their asserted equal protection violation, they are not entitled to injunctive relief on that claim.

---

[9]     Additionally, for the same reasons as Plaintiffs' federal substantive due process claim, Plaintiffs fail to overcome rational basis review. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) (finding that rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."). To be clear, I find that the Borough has a legitimate interest in reducing short-term rentals, specifically those tied to home-sharing websites like Airbnb, to preserve the quality of life in the Borough's predominantly residential neighborhoods and reduce public nuisances typically associated with frequent rentals and transient guests without any connection to the Borough. Moreover, to the extent that the Ordinance treats owner-occupied multi-dwellings differently than non-owner occupied rental properties, *see* Ordinance No. 2021-33 at § 13-14.5, that treatment also survives rational basis review. Although owner-occupied properties have no durational limitations under the Ordinance, those individuals are more inclined to monitor the property, as well as the welfare of the community at-large, because they are physically present within the community on a daily basis. *See Chicago Board of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 740 (7th Cir.1987) (upholding differential treatment of non-owner-occupied properties against equal protection challenge). That same reasoning also applies to the Ordinance's exception for previous use, which eliminates any durational limitations for those who own more than one home in the Borough and actually reside in the Borough between September 30th and May 15th, provided that the unit to be rented was owned by the Borough resident prior to the effective

### 3. *Fair Housing Act*

Finally, Plaintiffs argue that the Ordinance will have a greater adverse impact on groups protected by the FHA, as well as, families with children. (Pl. Supp. Br., 15.) In particular, Plaintiffs emphasize that residential rental properties, like the ones owned by Plaintiffs, "offer a home-like atmosphere for visitors and vacationers," which "typically cater to families in ways that traditional hotels and motels do not." (*Id.*) Thus, according to Plaintiffs, "[b]y explicitly seeking to 'curtail' or 'prohibit' short-term residential rentals, and by also imposing arbitrary and unreasonable burdens on longer-term rentals, the Ordinance almost surely will have a disparate impact by making unavailable rentals that are often uniquely capable of accommodating such family visitors and vacationers." (*Id.*)

At least one case, however, *Weisenberg v. Town Bd. of Shelter Island*, 404 F. Supp. 3d 720, 728–29 (E.D.N.Y. 2019), suggests that Plaintiffs' FHA claim is unavailing. There, owners of a residential property brought an action against the Town of Shelter Island and the Town of Shelter Island Board, alleging that enactment of a short-term rental law, which imposed licensing and advertising requirements for certain vacation rentals, and prohibited regulated vacation rentals from being rented more than once in any 14-day period, violated, among other things, the Fair Housing Act. The district court acknowledged that the FHA makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a "dwelling" on the basis of familial status. 42 U.S.C. § 3604(b). The court further explained that the FHA defines the term "dwelling" as, in relevant part, "any building, structure, or portion thereof which is occupied

---

date of the Ordinance. (*See* Ordinance No. 2021-33 at § 14.6.) Indeed, "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Communications*, 508 U.S. at 313; *see also Donatelli v. Mitchell*, 2 F.3d 508, 513 (3d Cir. 1993).

as, or designed or intended for occupancy as, a residence by one or more families." *Id.* at § 3602(b). According to the court, however, no statutory definition exists for the term "residence." Surveying other circuit courts and other district courts within the Second Circuit, the court found that "residence" means a place "intended to be used for living, rather than merely visiting." *See Jenkins v. N.Y.C. Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 517–18 (S.D.N.Y. 2009) (noting that courts define residence according to its plain meaning as "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit") (quoting *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 548-49 (W.D. Va. 1975)), *aff'd on other grounds*, 391 F. App'x 81 (2d Cir. 2010). Because the plaintiffs did not allege that their vacation rentals were intended for use as actual residences by renters, nor did the complaint include any allegations that the short-term tenants of these residences treat the vacation rentals as homes or intend to return to them, the court dismissed the plaintiffs' FHA claim.

Similarly, here, the Complaint does not allege that Plaintiffs' properties are being used by renters for long-term stay such that they could be considered the renters' residence.[10] Indeed, whether in their initial briefing or their supplemental briefing, Plaintiffs did not provide any case law to support their claim that short-term rental laws like the one embodied by the Ordinance, run afoul of the FHA. Accordingly, the Court finds no likelihood of success as to Plaintiff's FHA claim.

---

[10]   In fact, Plaintiffs argue that the Ordinance's most offensive provision to the FHA is the 7-day short-term rental requirement because it limits family visitors and other vacationers during summer months. Clearly, those families and short-term vacationers are not occupying Plaintiffs' property for long-term stays such that the property could be considered their residence under the FHA.

IV.    **<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiffs' motion for a preliminary injunction is **GRANTED**, in part. The Court issues only a limited injunction, enjoining the Ordinance's overbroad definition of the term "Rental," which, as drafted, infringes on Plaintiffs' fundamental right to privacy under the New Jersey Constitution. Specifically, applying the principles of severance, the Ordinance's definition of "Rental" shall be limited to "the use of a residence by someone other than the owner where funds are transferred for said use."

Dated: May 25, 2022                                      <u>/s/ Freda L. Wolfson</u>
                                                                          Freda L. Wolfson
                                                                          U.S. Chief District Judge