**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBIN and LEONARDO SELVAGGI, <br><br> Plaintiffs, <br><br> v. <br><br> BOROUGH OF POINT PLEASANT BEACH, *et al.*, <br><br> Defendants. | Civil Action No. 22-00708 (RK) (JBD) <br><br> **OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Point Pleasant Beach Borough and Point Pleasant Beach Borough Council ("the Borough" or "Defendants"). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Borough's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** as to Plaintiffs' facial ultra vires, procedural due process, equal protection, and Fair Housing Act claims. The Borough's Motion is **DENIED** as to Plaintiffs' substantive due process, New Jersey Law Against Discrimination, New Jersey Civil Rights Act, as-applied ultra vires, and dormant Commerce Clause claims.

## I.   **BACKGROUND**

### A.   FACTUAL BACKGROUND[1]

Plaintiffs Robin and Leonardo Selvaggi ("Plaintiffs") reside primarily in California, but also own three (3) rental properties located within the Borough. (FAC ¶¶ 1, 13.) Plaintiffs purchased the properties within the Borough "for the purpose of renting their properties to tourists." (*Id.* ¶ 9.) Plaintiffs both rent their properties to tourists and visitors to the Borough and also "make their properties available to their own families and relatives free of charge." (*Id.* ¶ 1.)

On December 7, 2021, the Borough adopted Ordinance No. 2021-33 (the "Ordinance"). (*Id.* ¶ 16.) The Ordinance sets forth seasonal rental regulations including regulations pertaining to the issuance of rental licenses. (*Id.* ¶ 18.) The stated purpose of the Ordinance is:

> to curtail, and in certain circumstances prohibit, the increasingly widespread practice of renting or leasing various types of dwellings, or segments thereof, located primarily in residential neighborhoods, on a short-term basis to transient guests. This practice has been popularized and facilitated by various websites that advertise and broker these rentals. Left unregulated, this practice will transform many residential dwellings into a detriment to the health, safety, and quiet enjoyment of the affected neighborhoods.

(*Id.* ¶ 47 (quoting Ordinance § 13-14A).) To achieve these ends, the Ordinance provides: "No dwelling, or segment thereof, may be rented or leased for a term of less than [a] month." (*Id.* ¶ 48 (quoting Ordinance § 13-14.3).) However, during the summer season, from May 15th through September 30th, "minimum rentals of seven days or more of a dwelling unit are permitted." (*Id.* ¶ 49 (quoting Ordinance § 13-14.3).) In short, owners may rent their houses for a minimum of seven (7) days during the summer and one month during the off-season.

---

[1] The facts set forth in this Opinion are taken from Plaintiffs First Amended Complaint ("FAC"). (ECF No. 31.)

However, notwithstanding the above restrictions, the Ordinance provides exceptions for owner-occupied dwellings and dwellings owned by residents of the Borough. First, "owner occupied multi-unit dwellings shall have no duration restrictions if the owner personally resides in one of the units during the time of the tenancy." (*Id.* ¶ 51 (quoting Ordinance § 13-14.5).) Second, "residents of Point Pleasant Beach who own more than one home in Point Pleasant Beach during any period the resident is actually present and living in Point Pleasant Beach from September 30th to May 15th shall have no duration restrictions, provided that the unit to be rented was owned by the resident on or before the effective date of this Ordinance." (*Id.* ¶ 52 (quoting Ordinance § 13-14.6).) The exception for Borough residents is essentially a grandfather clause for residents who live in the Borough in the off-season. The Ordinance defines "Rental" to "include the use of a residence by someone other than the owner even though no funds are transferred for said use." (*Id.* ¶ 19 (quoting Ordinance § 13-2).)

The Ordinance also contains inspection and licensing requirements. The Ordinance requires owners of residential rental properties, or any agent acting on behalf of the owners, to apply for and obtain a "rental certificate of occupancy" as well as a "rental license" prior to renting any "housing or living unit for residential purposes for occupancy including the period between Memorial Day and Labor Day[.]" (*Id.* ¶ 23 (quoting Ordinance § 13-6).) Applicants must provide a written statement "that there have been no prior revocations or suspensions of the license, and that there are no pending open complaints awaiting a hearing." (*Id.* ¶ 25 (quoting Ordinance § 13-8.a).) Applications that indicate a prior revocation, suspension, or pending open complaint awaiting a hearing must be denied. (*Id.*) The Ordinance requires that properties must be inspected before a certificate of occupancy or rental license are issued and provides that an inspection shall be conducted within thirty (30) days from filing of the application. (*Id.* ¶ 39 (citing Ordinance

§ 13-9.d).) Rentals must be inspected at least once every three (3) years, upon application, and "for rentals of a year or more, upon change of occupancy." (*Id.* ¶ 40 (citing Ordinance § 13-9.e).) However, for rentals with tenancies of less than one year, certificates of occupancy and rental licenses expire on December 31st of the year issued, or "until a change in occupancy occurs, whichever occurs first." (*Id.* ¶ 42 (citing Ordinance § 13-11).) In short, according to Plaintiffs, the Ordinance requires a new application—and a new inspection—upon every change in tenancy for rentals of less than one year. (*Id.* ¶ 43.)

### B. PROCEDURAL HISTORY

On January 24, 2022, Plaintiffs filed an action in the Superior Court of New Jersey, Law Division, Ocean County challenging the Ordinance. (*Id.* ¶ 4.) Plaintiffs brought five (5) causes of action. They alleged that the Ordinance is arbitrary, capricious, and unreasonable and therefore ultra vires (Count One); violates the principles of procedural and substantive due process found in the New Jersey and United States Constitutions (Count Two); violates the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 (Count Three); violates the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 *et seq.* (Count Four); and violates the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2 (Count Five). (*See* ECF No. 1-1.) On the same day that they filed their Complaint, Plaintiffs also filed an "Order to Show Cause" ("OTSC") asking the Court to temporarily enjoin the Borough from enforcing the Ordinance and order the Borough to show cause (1) why the Ordinance is not invalid in whole or in part, or alternatively (2) why the Court should not enter a declaratory judgment that the Ordinance is ultra vires in whole or in part. (ECF No. 1-1 at *27 ("OTSC").)

On February 9, 2022, Defendants removed the action to the United States District Court for the District of New Jersey. (ECF No. 1; *see also* FAC ¶ 5.) Thereafter, the parties filed a number

of briefs in support and in opposition to Plaintiffs' request for injunctive relief. (*See* ECF No. 4, 7–9.) In an opinion issued on May 25, 2022, the Honorable Freda L. Wolfson granted Plaintiffs' OTSC in part.[2] (ECF No. 10 at 1 ("OTSC Op.").) The Court found that Plaintiffs' substantive due process claim arose under the NJCRA and that Plaintiffs were likely to succeed on this claim because the definition of "Rental" as drafted infringed upon Plaintiffs' fundamental right to privacy under the New Jersey Constitution. (*Id.*) The Court issued a limited injunction, enjoining the Ordinance's "overboard definition of the term 'Rental.'" (*Id.*) Applying the principles of severance, the Court ordered that the Ordinance's definition of "Rental" shall be modified from "the use of a residence by someone other than the owner *even though no funds are transferred* for said use" to "the use of a residence by someone other than the owner *where funds are transferred for said use.*" (*Id.* at 22 (emphasis added).) The Court found that Plaintiffs were not likely to succeed on the merits on the remainder of their claims and denied Plaintiffs' OTSC as to those claims. (*See generally* OTSC Op.)

Following the Court's decision on Plaintiffs' OTSC, the Borough moved to dismiss Plaintiffs' Complaint. (ECF No. 13.) Plaintiffs filed a Brief in Opposition, and the Borough filed a Reply. (ECF Nos. 16, 19.) However, before a decision was issued, on November 17, 2022, Plaintiffs moved for leave to file an Amended Complaint. (ECF No. 22.) The Borough opposed. (ECF No. 26.) The Honorable J. Brendan Day granted Plaintiffs' Motion for Leave, and on June 7, 2023, Plaintiffs filed an Amended Complaint. (ECF Nos. 30, 31.) The Amended Complaint restates the five causes of action that were in Plaintiffs' initial complaint and adds an as-applied ultra vires challenge, alleging that, due to the Borough's untimely implementation of the

---

[2] On May 15, 2023, the case was reassigned to the Undersigned. (ECF No. 29.) However, for ease of reference, the Court will simply refer to Chief Judge Wolfson's OTSC analysis and decision as the Court's analysis and decision.

Ordinance's inspection and licensing scheme, the Ordinance effectively creates a moratorium on short term rentals. (FAC ¶¶ 75–81.) The Amended Complaint also adds a challenge pursuant to Article 1, Section 8, Clause 3 of the United States Constitution (also known as the "dormant Commerce Clause"). (FAC ¶¶ 94–106.) The Borough moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on June 21, 2023. (ECF No. 32.) On July 24, 2023, Plaintiffs filed a Brief in Opposition, and on August 14, 2023, the Borough filed a Reply. (ECF Nos. 34, 38.) The Borough's Motion to Dismiss is now pending before the Court.

## II.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure (12)(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

## III.   **DISCUSSION**

The Borough argues that the Amended Complaint must be dismissed because (1) the Court already determined that Plaintiffs cannot prevail on their facial ultra vires, due process, and equal

protection claims; and (2) the as-applied ultra vires and dormant Commerce Clause claims added in the Amended Complaint are equally unavailing. (ECF No. 32-1 ("Def. MTD") at 15.)

### A.    UNADDRESSED CLAIMS

At the outset, the Court notes that the Borough failed to address three counts from the Amended Complaint in its Motion to Dismiss: (1) Plaintiffs' federal substantive due process claim; (2) Plaintiffs' NJLAD claim; and (3) Plaintiffs' state substantive due process claim arising under the NJCRA. (*See generally* Def. MTD.) In their Brief in Opposition, Plaintiffs point out that the Borough failed to address these claims. (ECF No. 34 ("Pls. Opp.") at 1.) In its Reply brief, the Borough concedes that it did not move to dismiss these claims but argues that it was unnecessary as the Court "has already effectively dismissed" them. (ECF No. 38 ("Def. Reply") at 3 n.1.) The Court is unpersuaded.

It is well-established that a decision on a preliminary injunction is "not a merits disposition." *Morris v. Hoffa*, 361 F.3d 177, 189 (3d Cir. 2004). "[A] decision on a preliminary injunction is, in effect, only a prediction about the merits of the case." *United States v. Local 560, IBT*, 974 F.2d 315, 330 (3d Cir. 1992). Therefore, "a trial court, in deciding whether to grant permanent relief, is not bound by its decision or the appellate court's decision about preliminary relief." *Id.* Indeed, the law of the case doctrine does not require a court to follow the legal analysis contained in a prior decision addressing the question of whether a party that moved for preliminary injunctive relief showed a likelihood of success on the merits. *Pitt News v. Pappert*, 379 F.3d 96, 104 (3d Cir. 2004); *see also University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Rather, the trial court "is free to reconsider the merits of the case." *Local 560, IBT*, 974 F.2d at 330.

In its OTSC decision, the Court denied Plaintiffs' request for injunctive relief as to their federal substantive due process claim. (OTSC Op. at 12.) The Court reasoned that the "unbridled

right to use [] property as a rental" is not a fundamental right nor does the over-regulation of rental properties infringe upon a recognized fundamental right rooted in the federal constitution. (*Id.* at 9–10.) Thus, applying rational basis review, the Court determined that Plaintiffs' claim was not likely to succeed on the merits. (*Id.* at 12.)

The Court's OTSC decision on Plaintiffs' request for injunctive relief was not a dismissal of Plaintiffs' claims. Had the Borough moved to dismiss Plaintiffs' federal substantive due process claim, the Court would not have been bound by its prior analysis regarding whether Plaintiffs had demonstrated a likelihood of success on the merits to entitle them to injunctive relief.

In its Reply brief, the Borough argues for the first time that Plaintiffs' federal substantive due process claim fails because the Ordinance is rationally related to a legitimate public interest. (ECF No. 38 at 4.) "A party cannot raise issues for the first time in a reply brief." *Stern v. Halligan*, 158 F.3d 729, 731 n. 3 (3d Cir. 1998); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n.3 (D.N.J. 1999) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." (citing *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992) (refusing to consider an issue raised for the first time in a reply brief))); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 204–05 n.29 (3d Cir. 1990) (same); *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 (D.N.J. 1999) (same); *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (same). The Court will not address arguments raised for the first time in a Reply brief and finds the Borough's failure to address Plaintiffs' federal substantive due process claim in its opening brief dispositive. Any request to dismiss this claim contained in the Borough's Reply brief is **DENIED**.

With respect to Plaintiffs' NJLAD claim, contrary to the Borough's representation, (Def. Reply at 3 n.1), the Court did not effectively dismiss this claim in its decision on Plaintiffs' OTSC. Plaintiffs did not request injunctive relief on their NJLAD claim, and the Court therefore did not address this claim in its decision. (*See generally* OTSC Op.)[3] Based on Defendants' failure to move to dismiss this claim, Plaintiffs' NJLAD claim must also survive.

Finally, with respect to Plaintiffs' state substantive due process claim, again contrary to the Borough's representation, (Def. Reply at 3 n.1), this claim was not effectively dismissed. Just the opposite. In its OTSC decision, the Court determined that Plaintiffs' "state substantive due process claim arises under the NJCRA" and concluded that Plaintiffs "satisfied the requirements for limited injunctive relief based on their New Jersey Civil Rights Act claim (Count Five) for violation of Plaintiffs' substantive due process rights under the New Jersey Constitution." (OTSC Op. at 12, 20.) The Court reasoned that the Ordinance's definition of "Rental" infringed on Plaintiffs' fundamental right to privacy grounded in the New Jersey Constitution and therefore the Ordinance was subject to strict scrutiny. (*Id.* at 12, 17.) Applying the strict scrutiny standard, the Court found that the definition of "Rental" is "so untethered from the Borough's purpose in enacting the Ordinance that Plaintiffs have demonstrated a likelihood of success on the merits of their state substantive due process claim." (*Id.* at 19.) Having concluded that Plaintiffs satisfied the other requirements for injunctive relief based on their NJCRA claim, the Court narrowly enjoined the Ordinance's definition of "Rental" and ordered that the definition be modified from "the use of a residence by someone other than the owner even though no funds are transferred for said use" to "the use of a residence by someone other than the owner where funds are transferred for said use." (*Id.* at 22.)

---

[3] The Borough did not even attempt to raise arguments about Plaintiffs' NJLAD claim in its Reply brief.

In its Motion to Dismiss, the Borough represents that the Ordinance is "currently being enforced in accordance with the Court's definition of 'Rental.'" (Def. MTD at 15.) However, the Borough tellingly does not move to dismiss Plaintiffs' NJCRA claim or raise any other arguments in its briefing about Plaintiffs' state substantive due process claim. The Court nonetheless cannot dismiss a claim that the Borough did not move to dismiss.[4] Thus, Plaintiffs' state substantive due process claim arising under NJCRA must also survive. This issue may be re-raised on Federal Rule of Civil Procedure 56 posture, if warranted.

The Court will next turn to the remaining claims that briefed by the parties in their Motion to Dismiss briefing.

B.   **ULTRA VIRES**

Plaintiffs' Amended Complaint raises both facial and as-applied ultra vires challenges to the Ordinance. The Court will address each argument in turn.

1.   **Facial Challenge**

Plaintiffs allege that the Ordinance's purpose is to regulate rental properties "based on the identities of the occupants of the properties, in an improper attempt to regulate the attributes of property ownership and the nature of the occupancy of property." (FAC ¶ 55.) Plaintiffs argue that the Ordinance is, on its face, arbitrary, capricious, and unreasonable and thus ultra vires. (*Id.*) The Borough moves to dismiss Plaintiffs' ultra vires claim. (Def. MTD at 16–21.)

"[A] municipality is a creature of the Legislature, and as such is a government of enumerated powers which can act only by delegated authority." *Inganamort v. Borough of Fort Lee*, 371 A.2d 34, 37 (1977) (citation omitted). "Any exercise of a delegated power by a

---

[4] *See* Fed. R. Civ. Pro. 7(b)(B) ("A request for a court order must be made by motion" which must, among other things, "state with particularity the grounds for seeking the order . . . .").

municipality in a manner not within the purview of the governing statute is capricious and ultra vires of the delegated powers." *Giannone v. Carlin*, 120 A.2d 449, 452 (1956). "Two forms of ultra vires acts exist under the law: ultra vires acts in the primary sense and ultra vires acts in the secondary sense." *City Council of City of Orange Twp. v. Edwards*, 189 A.3d 356, 362 (App. Div. 2018). A municipal action is ultra vires in the primary sense when it is "utterly beyond the jurisdiction of a municipal corporation"—in other words, when a municipality acts "utterly without capacity." *Id.* at 362, 363. A municipal action is ultra vires in the secondary sense when the action is "generally within the power of the municipality but was carried out improperly or irregularly." *Id.* at 363; *see also* Ultra Vires, Black's Law Dictionary (10th ed. 2014) (stating that "ultra vires" means "[u]nauthorized; beyond the scope of power allowed or granted . . . by law").

"[W]hen reviewing a municipal action, [courts] apply a presumption of validity and reasonableness to adopted ordinances." *Timber Glen Phase III, LLC v. Twp. of Hamilton*, 120 A.3d 226, 231 (App. Div. 2015) (collecting cases). Courts should not "pass on the wisdom of the ordinance; that is exclusively a legislative function." *Id.* (quoting *Pheasant Bridge Corp. v. Twp. of Warren*, 777 A.2d 334, 339 (2001), *cert. denied*, 535 U.S. 1077 (2002)). The party challenging a municipal action bears the burden of proving it is invalid. *New York SMSA Ltd. P'ship v. Bd. of Adjustment of Twp. of Bernards*, 734 A.2d 817, 825 (App. Div. 1999).

The Borough argues that the Ordinance is not ultra vires because it was enacted pursuant to its authority under the Licensing Act. (Def. MTD at 16.) The Licensing Act provides, in pertinent part:

> The governing body may make, amend, repeal and enforce ordinances to license and regulate:
> . . .
> d. Hotels, boardinghouses, lodging and rooming houses, trailer camps and camp sites, motels, furnished and unfurnished rented housing or living units and all other places and buildings used for

> sleeping and lodging purposes, and the occupancy thereof,
> restaurants and all other eating places, and the keepers thereof;
>
> . . .
>
> n. The rental of real property for a term less than 175 consecutive
> days for residential purposes by a person having a permanent place
> of residence elsewhere.

N.J. Stat. Ann. § 40:52–1.[5] The primary purpose of the Licensing Act is to "authorize municipalities to license and regulate, as police measures for the public health, safety, morals or welfare, the local businesses described therein, and only incidentally to impose on the businesses thus licensed and regulated license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs." *Salomon v. Jersey City*, 97 A.2d 405, 411 (1953). "Therefore, a municipality's exercised licensing authority cannot be an arbitrary exertion of that power, nor can the exercise be unreasonable." *Timber Glen Phase III, LLC*, 120 A.3d at 234 (cleaned up).

In its prior decision on Plaintiffs' OTSC, the Court determined that the Ordinance was not ultra vires. (OTSC Op. at 24.) The Court reasoned that the Ordinance "does not impose an outright

---

[5] The Borough also points to N.J. Stat. Ann. § 40:48-2, which provides, in pertinent part, that municipalities may adopt ordinances "as [they] may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants." The Borough also relies on N.J. Stat. Ann. § 40:48-12(a), which authorizes municipalities to adopt ordinances to "regulate buildings and structures and their use and occupation to prevent and abate conditions therein harmful to the health and safety of the occupants of said buildings and structures and the general public in the municipality." These statutes authorize municipalities to regulate rental properties, including requiring that they be inspected before being occupied by a new tenant and charge a fee for inspections and the issuance of certificates. *Cona v. Twp. of Washington*, 192 A.3d 1052, 1062 (App. Div. 2018) (citing *Dome Realty, Inc. v. City of Paterson*, 416 A.2d 334, 342 (1980)).

To the extent that Plaintiffs are challenging the Borough's authority to restrict the issuance of rental licenses, these statutes are inapplicable. While Section 40:48-2 authorizes municipalities to exercise general police power, it "does not include the right to require a license." *Timber Glen Phase III, LLC*, 120 A.3d at 233. Likewise, Section 40:48-12(a) authorizes municipalities to *regulate* the use of local buildings; it does not authorize the *licensure* of residential buildings. *Id.* at 231. The power to regulate and the power to license "although related, are discrete." *Id.* (citation omitted); *see also id.* at 234 ("Because the Legislature has specifically addressed licensing in Chapter 52 of Title 40 [(the Licensing Act)], we reject defendant's overarching proposition suggesting the general police power regulatory authority, as found in N.J.S.A. 40:48–2 or N.J.S.A. 40:48–2.12m, encompasses the authority to license residential rental units.").

ban on rental properties within the Borough." (*Id.*) Rather, the Ordinance simply imposes "temporal restrictions" on rental properties, which are authorized by the Licensing Act. (*Id.*)

In *Repair Master, Inc. v. Borough of Paulsboro*, the New Jersey Appellate Division considered the power of a municipality to place a moratorium on the issuance of rental licenses for residential rental properties. 799 A.2d 599, 600 (App. Div. 2002). In 1997, the Borough of Paulsboro adopted an ordinance which "authoriz[ed] the licensing of residential properties to insure [sic] 'proper maintenance' and 'protect the lives and property of the Borough residents.'" *Id.* at 601–02. Pursuant to that authority, in 2002, Paulsboro adopted a resolution that established a moratorium on the issuance of new rental licenses for certain non-owner-occupied residential properties; the purpose was to "impede the severely deleterious effects of the proliferation of rental properties in the Borough on the residents of [Paulsboro]." *Id.* at 602. The court concluded that Paulsboro did not have the authority to establish a moratorium on rental licenses. *Id.* at 608. The court reasoned that the moratorium "[did] not constitute an attempt to regulate the physical use of property but [was] an attempt to regulate the attributes of ownership and the nature of the occupancy of the property." *Id.* at 606.

Unlike the moratorium in *Repair Master*, the Ordinance in this case does not *prohibit* the issuance of licenses for short-term rentals—it simply limits the issuance of rental licenses to seven (7) days in the summer season and one month in the off-season. The Licensing Act expressly authorizes municipalities to adopt ordinances to license and regulate residential properties with rental terms of less than 175 days. In fact, in their opposition brief, Plaintiffs concede that the Licensing Act authorizes "municipalities to regulate specific business, including short-term rental properties, via licenses." (Pls. Opp. at 6.) The Court finds that the Ordinance's provisions fall within the Licensing Act's statutory grant. *See United Prop. Owners Ass'n of Belmar v. Borough*

*of Belmar*, 777 A.2d 950, 968 (App. Div. 2001) (upholding the scope of an ordinance regulating summer beach rentals, based on legislative authority, including Section 40:52–1(n) of the Licensing Act); *see also Cona v. Twp. of Washingto*n, 192 A.3d 1052, 1062 (App. Div. 2018) (finding that ordinances that charged fees for certificates of occupancy and rental licenses for rentals with terms of less than 175 days were not ultra vires). This decision is bolstered by the requirement that the Court must apply a presumption of validity and reasonableness to adopted ordinances. Accordingly, the Borough's Motion to Dismiss is **GRANTED** as to Plaintiffs' facial ultra vires challenge.

### 2. **As-Applied Challenge**

In their Amended Complaint, Plaintiffs add an as-applied ultra vires challenge to the Ordinance. Plaintiffs allege that the Ordinance creates a moratorium on short term rentals when practically applied. (FAC ¶ 76.) The thrust of Plaintiffs' as-applied challenge is to the timing of the Ordinance's inspection and licensing requirements. Plaintiffs allege that although the Ordinance permits short-term rentals, the Borough has failed to conduct timely inspections, thus making it "virtually impossible" to let such rentals. (*Id.* ¶¶ 43, 73, 78.)

While a facial challenge "tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case," *see City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 n. 11 (1988), an as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right," *see, e.g., Wis. Right to Life, Inc. v. FEC*, 546 U.S. 410, 411–12 (2006) (per curiam).

In the Court's Opinion on Plaintiffs' OTSC, the Court acknowledged that, while the Ordinance did not appear *ultra vires* on its face, it may result in a "moratorium on short term

rentals when practically applied," which is prohibited under *Repair Master*. (OTSC Op. at 25; *see Repair Master*, 799 A.2d at 608.) The Court stated that, "[b]ecause inspections are conducted within thirty days after filing of a new application, the practical effect is that short-term rentals, i.e., a minimum of seven days, between May and September, may be impossible due to the lack of timely inspections." (*Id.*) Nonetheless, the Court concluded that, while these allegations "raise red flags," Plaintiffs had not set forth sufficient facts "as to how, and when, the Borough conducts these particular inspections." (*Id.*)

In their Amended Complaint, Plaintiffs add factual allegations pertaining to how and when the Borough conducts inspections. Plaintiffs allege that "at the close of the 2022 summer rental season (Labor Day), there were at least eighteen (18) rental properties that the Borough had not yet inspected, even though more than thirty days had passed since the applications for such properties had been completed and application fees paid, so that no rental certificates of occupancy and/or licenses were issued for those properties during the summer season." (FAC ¶ 77.) Plaintiffs further allege that during the 2022 summer rental season, the Borough "was unable and failed to conduct timely inspections of dozens of seasonal rentals either after applications have been completed or after changes in tenancy, so that property owners, including Plaintiffs, could not obtain the inspections, certificates of occupancy and licenses required by the Ordinance . . . ." (*Id.* ¶ 78.) In short, Plaintiffs allege that "the Borough did not conduct inspections despite being notified of changes in tenancies." (*Id.* ¶ 79.) Plaintiffs further allege that because rental certificates of occupancy and licenses expire on December 31, and because the Borough is not processing applications and conducting inspections in a timely manner, Plaintiffs will not be able to obtain

certificates of occupancy and licenses in order to rent their properties during the off-season. (*Id.* ¶ 80.)[6]

While the Ordinance does not explicitly ban short-term rentals, the Amended Complaint alleges that, in practice, Plaintiffs will not be able to obtain rental licenses for the tenancy terms allowed under the Ordinance because the Borough has not timely conducted inspections upon changes in tenancy. Under the precedent in *Repair Master*, which makes clear that municipalities do not have the authority to ban the issuance of rental licenses, the Court finds this is enough to survive a Motion to Dismiss.

Defendants argue in passing that Plaintiffs new allegations fail to allege any period where the properties were not rented, just that the Ordinance *could have* created a moratorium—not that it *did* create a moratorium. (Def. MTD at 37.) However, the thrust of the Borough's Motion is that its own records belie Plaintiffs' allegations. The Borough argues that its own records (1) demonstrate that all of the Plaintiffs' properties were properly inspected and licensed since the enaction of the Ordinance; (2) do not reflect eighteen (18) properties that the Borough failed to inspect even though more than thirty (30) days had passed since the applications were submitted; (3) do not substantiate Plaintiffs' allegations that during the 2022 summer season, the Borough failed to conduct timely inspections of dozens of seasonal rentals or that the Borough did not

---

[6] Plaintiffs also allege that in reviewing Plaintiffs' applications and conducting inspections of Plaintiffs' properties for the 2022 season, the Borough (i) refused to deal directly with Plaintiffs to arrange inspection dates; (ii) purposefully misidentified a code compliant sitting room as a non-compliant bedroom and falsified a Notice of Violation by using an outdated photo of the room, thus requiring an unnecessary re-inspection, fees and delay; (iii) arbitrarily denied and refused to issue a certificate of occupancy to Plaintiffs' property for the correct maximum occupancy allowed by the applicable code; and (iv) arbitrarily reduced Plaintiffs' on-property parking spaces in violation of the New Jersey Municipal Land Use Law. (FAC ¶ 81.) The Borough argues that even assuming these allegations are true, at least (ii), (iii), and (iv) are not actually challenges to the Ordinance. (Def. MTD at 40.) Because the Court finds, *see infra*, that Plaintiffs have adequately pled an as-applied ultra vires challenge, it is unnecessary to address each of these additional factual allegations at this stage.

conduct inspections despite being notified of changes in tenancies; (4) show that Plaintiffs did, in fact, rent their properties during the winter of 2023; and (5) do not show a failure to license. (*Id.* at 38–39.)

Clearly there is a factual dispute, and, at the motion to dismiss stage, the Court may not resolve factual disputes or make credibility determinations. *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) ("The district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it."); *see also Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011), *as amended* (Oct. 7, 2011) (a district court generally looks only to the face of the plaintiff's complaint and is not permitted to make independent findings of fact when deciding a Rule 12(b)(6) motion). On a motion to dismiss, a court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation omitted).

The Court must accept the allegations in Plaintiffs' Complaint as true and declines the Borough's invitation to decide between the parties' competing facts as to whether Plaintiffs have been able to rent their properties despite the Ordinance's licensing and inspection regime. In fact, in the Borough's opposition to Plaintiffs' Motion for Leave to Amend, the Borough expressly concedes that, while Plaintiffs claims generally are "susceptible to determination on motion . . . [t]he as-applied claim *requires discovery* to determine if the facts asserted are correct" because the Borough "disputes the facts." (ECF No. 26 at 3 (emphasis added).)

Accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in favor of Plaintiffs at this stage, the Court finds that Plaintiffs have alleged sufficient facts to demonstrate that, as applied, the Ordinance functions as a de facto ban on short-term rentals within

the Borough. Accordingly, the Borough's Motion to Dismiss is **DENIED** as to Plaintiffs' as-applied *ultra vires* claim.

### C.    PROCEDURAL DUE PROCESS

The Court now turns to Plaintiffs' procedural due process claims. Plaintiffs allege that provisions requiring the denial of rental certificates of occupancy and rental licenses if there are "pending or open complaints" and permitting the suspension or revocation of rental licenses for prior violations of the Ordinance violates their procedural due process rights under the United States and New Jersey Constitutions. (FAC ¶¶ 25, 34.) The Borough moves to dismiss Plaintiffs' procedural due process claims. The Borough argues that Plaintiffs do not have a "right to unregulated occupancy of single-family residential homes by others who are not the owner," and, even if there were a property right at stake in the regulation of rentals in single family residential homes, state law provides an adequate remedial procedures, including the right to appeal any fines issued by municipal courts pursuant to the Ordinance to the New Jersey Law Division. (Def. MTD at 22–23.)

The Due Process Clause of the Fourteenth Amendment and Article I, Paragraph 1 of the New Jersey Constitution prohibit state deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; NJ Const Art. 1, ¶ 1. "To prevail on a procedural due process claim, plaintiffs must demonstrate the [municipality] deprived them of a protected property interest and state procedures for challenging that deprivation do not comport with due process of law." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1293 (3d Cir. 1993).[7] "'[T]he focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the

---

[7] Courts apply the same analysis for procedural due process claims under the federal and New Jersey Constitutions. *See Thomas Makuch, LLC v. Twp. of Jackson*, 298 A.3d 22, 31–33 (App. Div. 2023).

government's actual actions that allegedly deprived the individual of his liberty or property interest.'" *Giuliani v. Springfield Twp.*, 726 F. App'x 118, 122 (3d Cir. 2018) (quoting *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 397–98 (E.D. Pa. 2012)). Remedial procedures are constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures as fundamentally unfair." *See Leonard v. Owen J. Roberts Sch. Dist.*, No. 08-2016, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2009). "'[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body.'" *Giuliani*, 726 F. App'x at 122 (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003). Due process generally requires, at a minimum, "notice and the opportunity to be heard." *Thomas Makuch, LLC v. Twp. of Jackson*, 298 A.3d 22, 32 (App. Div. 2023) (citing *Goss v. Lopez*, 419 U.S. 565, 579 (1975). "[W]hen a state affords a full judicial mechanism with which to challenge the administrative decision in question,' [it] provides adequate procedural due process, whether or not the plaintiff avails himself or herself of the provided appeal mechanism." *Giuliani*, 726 F. App'x at 122; *see also Custin v. Wirths*, No. 12-910, 2020 WL 1466352 at *7 (D.N.J. Mar. 25, 2020) (aff'd, 850 F. App'x 147 (3d Cir. 2021); *DeBlasio*, 53 F.3d at 597.

In the Court's OTSC decision, the Court determined that Plaintiffs were not likely to succeed on their procedural due process claim. First, the Court explained that property interests are not created by the Constitution—rather "they are created and their dimensions defined" by independent sources such as state law. (OTSC Op. at 29 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985)).) Against this backdrop, the Court determined that Plaintiffs failed to demonstrate any legitimate claim of entitlement to a certificate of occupancy or rental

license under New Jersey law. Next, the Court determined that, even if Plaintiffs could demonstrate a property interest, their procedural due process claim would still fail because Plaintiffs are not challenging a lack of process afforded by the Ordinance but rather the substance of the Ordinance itself. (*Id.* at 30.) The Court explained that "[t]he model of procedural due process is a poor fit for a challenge to the substance of a municipal ordinance of general applicability." (*Id.* at 31 (quoting *Nekrilov v. City of Jersey City*, 528 F. Supp. 3d 252, 260–61 (D.N.J. 2021), *aff'd*, 45 F.4th 662 (3d Cir. 2022)).) Finally, the Court concluded that even if Plaintiffs were asserting a proper procedural due process claim, their claim would *still* fail because, in the case of complaints, the Ordinance provides for a hearing before an officer designed by the Borough's Governing Body, and in the case of any fines levied for violations of the Ordinance, New Jersey law permits such fines to be appealed to the New Jersey Law Division. (OTSC Op. at 31–32.)

The Court's prior analysis was sound, and nothing in the Amended Complaint changes that analysis. Plaintiffs have not pled any additional facts in support of their procedural due process claim. Nonetheless, in their opposition to the Borough's Motion to Dismiss, Plaintiffs argue that they have a specific property right to a certificate of occupancy and rental license. (Pls. Opp. at 17.) Plaintiffs contend that "the Ordinance itself creates an entitlement to a rental certificate or license upon satisfactory completion of the application described in the Ordinance." (*Id.* at 17–18 (citing Ordinance § 13-11 ("Upon the completion of a satisfactory inspection, the construction official **shall** forthwith issue the certificate of occupancy and/or license." (emphasis in Plaintiffs brief))).) Plaintiffs provide no legal authority for the proposition that a certificate of occupancy or a rental license may be treated as a property interest for which the due process protections of the Fourteenth Amendment would apply. In fact, the Third Circuit has held that, at least for purposes

of a Fifth Amendment takings claim, the "right to pursue [] short-term rental businesses" is not a property right. *Nekrilov v. City of Jersey City*, 45 F.4th 662, 670 (3d Cir. 2022).[8]

Even assuming that the Ordinance itself creates a legitimate claim of entitlement to a certificate of occupancy and rental license, the Court finds that Plaintiffs' procedural due process claims sill fail on the second prong of the analysis because there are adequate remedial measures in place. First, the Ordinance provides notice that rental licenses will not issue if the applicant has been subject to a prior revocation, suspension, violation, or pending complaint and that violations of the Ordinance may result in license revocations or suspensions. Ordinance, §§ 13-8, 13-22. *See Thomas Makuch, LLC*, 298 A.3d 22, 33 (finding that a measure regulating towing licenses provided adequate notice because it expressly informed the plaintiff that its towing license could be suspended). Second, the Ordinance provides an opportunity to be heard. The denial of a rental license may be appealed to the Borough's Governing Body. Ordinance § 13-8.b. Under the Ordinance, a hearing must be held, and a decision issued, within thirty (30) days of the filing of an appeal. *Id.* § 13-9.c. The Ordinance also provides that in the event that a license is suspended or revoked, a hearing shall be held before a hearing officer. *Id.* §§ 13-23.b., 13-26.A. Third, in the event that a person found to have violated the Ordinance is imposed fines and penalties established under N.J. Stat. Ann. § 40:49-5, those fines and penalties can be appealed to the New Jersey Law Division under New Jersey Court Rule 7:13-1. *See State v. Diaz*, No. A-1925-07T4, 2008 WL 4345847, at *1, (N.J. Super. Ct. App. Div. Sept. 25, 2008) (explaining that municipal court decisions may be appealed to the Law Division for de novo review); *see also Giuliani*, 726 F. App'x at 122 (finding adequate due process when a state affords a full judicial mechanism);

---

[8] The Third Circuit held the plaintiffs did have a cognizable property right in their *existing* short-term rental *contracts*. *Nekrilov*, 45 F.4th at 670 (citing *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 19 n.16 (1977) ("Contract rights are a form of property . . . .")). Plaintiffs do not allege the existence of any existing rental contracts that the Ordinance would abrogate.

*Thomas Makuch, LLC*, 298 A.3d 22, 33 (finding that an opportunity to meet with members of the township police department to discuss the suspension of a towing license and an opportunity to be heard in municipal court was adequate due process). Therefore, the Court concludes there are reasonable mechanisms in place with which to rectify any errors committed by the Borough in enforcing the Ordinance.

In their Brief in Opposition, Plaintiffs do not appear to contest the adequacy of the above-mentioned remedial measures, which they concede include "notice, hearing and a right to appeal." (Pls. Opp. at 19.) Rather, Plaintiffs take issue with the fact that under the plain meaning of the Ordinance, the applicant for a certificate of occupancy and rental license must provide a statement that "neither the property or the individual applicant" has had any prior violations of any Borough ordinance since January 1, 2022. (*Id.* (citing Ordinance § 13-8.b).) An applicant may be either the owner or an agent acting on behalf of the owner. *See* Ordinance § 13-6. Furthermore, the Ordinance provides that a license may be suspended or revoked based on "[a]ny violation of [the Ordinance] or any Borough ordinance." (Pls. Opp. at 19 (citing Ordinance § 13-22).) The result of these provisions together, according to Plaintiffs, is that if Plaintiffs' *agent* is charged with a violation pertaining to a *different* rental property owned by a *different* owner, that agent's rental license may be revoked "with no requirement that a violation relating to those innocent properties/owners exist or that a hearing or proceeding under Section 13-23 of the Ordinance be conducted as to those other licensees." (*Id.*) In short, Plaintiffs argue that their properties' rental license "once duly issued, can be suspended or revoked based on violations [] connected to other properties to which their only connection is a shared local agent . . . ." (*Id.* at 20.)

Presuming Plaintiffs' reading of the Ordinance is correct—that a rental license for Property A may be suspended for the conduct of an agent pertaining to Property B—the Court finds that no

22

procedural due process violation has occurred. First, Plaintiffs have provided no caselaw supporting the proposition that a due process violation occurs under such circumstances. Second, as noted above, the focus of the analysis on a procedural due process claim is not on the government action that allegedly deprives the individual of a property interest—the focus is on the adequacy of the remedial procedures. *Giuliani*, 726 F. App'x at 122. Here, Plaintiffs' challenge is to the Ordinance's alleged deprivation of Plaintiffs' right to a rental license for their property on the basis of unrelated violations on the part of their agents. What Plaintiffs do not appear to challenge is the remedial measures in place to rectify this alleged error committed by the Borough. Plaintiffs do not argue that agents acting on their behalf cannot avail themselves of the relevant remedial measures—in fact, curiously, Plaintiffs appear to recognize that the Ordinance's remedial measures are available "for licensees *and their agents*." (Pls. Opp. at 19 (emphasis added).) The Court therefore finds that Plaintiffs have failed to state a cognizable procedural due process claim.[9] Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' procedural due process claims.

### D.   EQUAL PROTECTION

The Court next turns Plaintiffs' federal and state equal protection claims. As noted above, the Ordinance provides certain exceptions for owner-occupied dwellings and dwellings owned by residents of the Borough. To review, there are no duration restrictions on rentals for owner-occupied properties or properties owned by residents of the Borough who are actually present and

---

[9] Plaintiffs also appear to bring a procedural due process challenge to the Ordinance's requirement that applicants for rental certificates of occupancy and rental licenses (either the owners or their agents) must have a permanent address in the Borough. According to Plaintiffs, this provision forces non-resident owners to use only local agents located within the Borough. (FAC ¶¶ 31–32.) Plaintiffs raise no arguments pertaining to this challenge nor do they provide any legal authority for the proposition that non-resident owners have a property right to use non-local agents when renting their residential properties or that requiring local agents somehow deprives them of due process.

living in the Borough during the off-season. (FAC ¶¶ 51–52 (quoting Ordinance §§ 13-14.5–14.6).) Plaintiffs allege that these exceptions impermissibly discriminate against renters and against non-resident property owners in violation of the equal protection clause of the United States and New Jersey Constitutions. (*Id.* ¶¶ 42, 52.) Plaintiffs further allege that public comments made by the mayor of the Borough "indicate that the actual intent and effect is to enforce the provisions of the [O]rdinance in an arbitrary and discriminatory manner . . . ." (*Id.* ¶ 56.) According to Plaintiffs, the mayor "acknowledged that the overriding purpose and goal of the ordinance is to regulate the nature of the occupancy of residential properties in the Borough to discourage and limit absentee property ownership and to encourage ownership and occupancy of homes by full-time residents, specifically by families with children who would live in the Borough as full-time residents and attend the Borough's schools." (*Id.* ¶ 60.)

The Borough moves to dismiss Plaintiffs' equal protection claims.[10] The Borough argues that regulations that draw distinctions based on durations of residency or having a permanent place of residence elsewhere are explicitly authorized by the legislature and are neither discriminatory nor unconstitutional. (Def. MTD at 24.)

The Court will begin with Plaintiffs' federal equal protection claim. The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003). "If the

---

[10] The Court's OTSC Opinion only addressed Plaintiffs' equal protection claim brought pursuant to the United States Constitution. (*See* OTSC Op. at 32–34.) The parties, for their part, appear to conflate the claims. Although it is not entirely clear to the Court whether the Borough is moving to dismiss Plaintiffs' state equal protection claim, (*see* Def. MTD 24–27), in an abundance of caution, the Court will address Plaintiffs' claims under both the federal and state constitutions.

challenged state action involves a suspect classification based on race, alienage or national origin, or infringes on a fundamental constitutional right, [courts] must apply the strict scrutiny standard." *Doe v. Pennsylvania Bd. of Prob. and Parole*, 513 F.3d 95, 107 (3d Cir. 2008) (internal quotation marks and citations omitted). However, "if a law neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Rational basis review is "very deferential," *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018), and "a paradigm of judicial restraint." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Courts will not overturn a government action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [it] can only conclude that the [government's] actions were irrational." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83–84, (2000) (citation omitted). "[W]here a group possesses distinguishing characteristics relevant to interests the State has the authority to implement, a State's decision to act on the basis of those differences does not give rise to a constitutional violation." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (citation omitted).[11]

In the Court's Opinion on Plaintiffs' OTSC, the Court determined that Plaintiffs were not likely to succeed on their federal equal protection claim. The Court explained that there is no fundamental right to rent property and that Plaintiffs did not claim that the Ordinance discriminates

---

[11] An equal protection claim can also succeed under a "class of one" theory in cases where an individual is being singled out by the government. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008). Pursuant to this theory, a plaintiff must allege arbitrary and intentional discrimination. *Id.* Specifically, the plaintiff must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *see also Mosca v. Cole*, 217 Fed. Appx. 158, 164 (3d Cir. 2007).

on the basis of a protected class. (OTSC Op. at 33.) The Court therefore applied rational basis review and determined that the Ordinance passed constitutional muster. (*Id.* at 34 n.9.)[12]

In their opposition to the Borough's Motion to Dismiss, Plaintiffs argue that "it should make no difference that Plaintiffs are not residents or owner-occupiers." (Pls. Opp. at 22.) However, Plaintiffs appear to concede that the Ordinance should be subject to rational basis review. (*Id.* at 23.) Nonetheless, they contend that the Ordinance's purpose—which Plaintiffs argue is an attempt to "alter the community's dynamics and demographics and control the ratio of owners and tenants"—is illegitimate. (*Id.* at 23.) Plaintiffs also note that, in its Motion to Dismiss, the Borough states that "[i]t is not the law in New Jersey that residents and their elected officials must sit idly by while residences are misused for personal profit by the non-resident owners." (*Id.* at 24 (citing Def. MTD at 16).) According to Plaintiffs, preventing the "misuse" of properties by rentals does not constitute a legitimate purpose. (*Id.*) Lastly, Plaintiffs argue that, even if the purpose of the Ordinance were legitimate, its means are not rationally related to its ends because the Ordinance permits residents to rent their properties without any duration restrictions, and "[a] rental property owned by a resident is still a rental property, and it does not impact demographics of the community . . . any more or less than if the owner is a non-resident." (*Id.*)

The Court agrees that the Ordinance does not involve a fundamental right and does not discriminate against a suspect class. *See Lock Haven Prop. Owners' Ass'n v. City of Lockhaven*, 911 F. Supp. 155, 160–61 (M.D. Pa. 1995) (finding a city ordinance governing inspection of non-owner occupied rental property did not involve any discernible fundamental interest and did not impact any protected class). The Ordinance is thus subject to rational basis review. As the Court

---

[12] The Court also concluded that Plaintiffs could not make out a claim under the class of one theory because they cannot demonstrate that they are "somehow treated differently by the Ordinance compared to others similarly situated, i.e., other property owners within the Borough." (*Id.* at 34.)

found in ruling on Plaintiffs' OTSC, the Court again finds that the Borough has a legitimate interest in reducing short-term rentals in order "to preserve the quality of life in the Borough's predominantly residential neighborhoods and reduce public nuisances typically associated with frequent rentals and transient guests without any connection to the Borough." (OTSC Op. at 34 n.9.) Moreover, the Court finds that the Ordinance is rationally related to those ends. Owners who are permanent residents of the Borough may be more likely to be conscientious and respectful of the community in renting their properties to visitors to the Borough. Likewise, owners who occupy the property during the course of the rental period are more likely to "monitor the property, as well as the welfare of the community at-large, because they are physically present within the community on a daily basis." (*Id.*)[13]

The Court's conclusion is bolstered by decisions by other courts who reached the same result on similar claims. *See, e.g.*, *Marcavage v. Borough of Lansdowne, Pa.*, 826 F. Supp. 2d 732, 744 (E.D. Pa. 2011), *aff'd*, 493 F. App'x 301 (3d Cir. 2012) (applying rational basis review and rejecting plaintiff's equal protection challenge to an ordinance that required inspections of owner-

---

[13] Plaintiffs contend that the Court erred in its OTSC Opinion because the Court "imagined that the Borough might have a legitimate public interest in reducing short-term rentals," arguing that the Court "simply cannot intuit, infer or hypothesize a sound or legitimate public purpose for the Ordinance." (Pls. Opp. at 10.) Plaintiffs' argument reflects both a misunderstanding of the Court's OTSC analysis and a misunderstanding of the caselaw guiding the Court's application of rational basis review.

First, the legislative purpose identified by the Court in its OTSC Opinion reflects the stated purpose found in the Ordinance itself: to limit short-term rentals to transient guests in primarily residential neighborhoods in order to protect the health, safety, and quiet enjoyment of residential neighborhoods. (*Compare* OTSC Op. at 34 n.9 *with* FAC ¶ 47 (quoting Ordinance § 13-14A).)

Second, a Court may speculate as to a statute's legislative purpose and the rational relationship between that purpose and its means. "[A] legislature . . . [need not] actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992). Nor must they "produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (citations and internal quotation marks omitted). "A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* "[T]he burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Garrett*, 531 U.S. at 367 (quoting *Heller*, 509 U.S. at 320).

occupied residences in buildings which also contained rental units, but not inspection of residences unattached to any rental property); *Lock Haven Prop. Owners' Ass'n*, 911 F. Supp. at 161 (finding an ordinance requiring inspections of non-owner occupied rental properties, but not owner-occupied rental properties was rationally related to ensuring the health, safety, and welfare of occupants of rental units and rejecting plaintiffs' equal protection challenge); *Help Hoboken Hous. v. City of Hoboken, N.J.*, 650 F. Supp. 793, 799–800 (D.N.J. 1986) (finding that an ordinance requiring owners of apartments to let vacant units "easily passes" rational basis review and rejecting plaintiffs' equal protection challenge). Accordingly, the Borough's Motion to Dismiss is **GRANTED** as to Plaintiffs' federal equal protection claim.

The Court now turns to Plaintiffs' state equal protection claim. The New Jersey Constitution also requires that similarly situated individuals be treated alike. *Brown v. State*, 811 A.2d 501, 505 (App. Div. 2002). The state equal protection analysis "employs a balancing test and when striking the balance, a court must consider the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." *Id.* at 506 (cleaned up). "Statutes carry a strong presumption in favor of constitutionality, and the proponent of invalidity bears the heavy burden of overcoming that presumption." *Id.* "Although the [s]tate approach differs analytically from the [f]ederal approach, the two approaches 'will often yield the same result.'" *Secure Heritage, Inc. v. City of Cape May*, 825 A.2d 534, 547 (App. Div. 2003) (quoting *Barone v. Dep't of Human Servs.*, 526 A.2d 1055, 1062 (1987)). "'To a large extent,' the considerations involved in the State equal protection analysis are implicit in the Federal rational basis test." (*Id.* (quoting *Barone*, 526 A.2d at 1062).)

The affected right in this case is that of non-resident owners to rent their properties on a short-term basis. The Ordinance intrudes on this right by imposing temporal restrictions on tenancy

terms. The counterbalance is the public need to preserve the quality of life in the Borough's predominantly residential neighborhoods and reduce public nuisances typically associated with frequent rentals and transient guests. The Court finds that Plaintiffs' asserted right is largely economic in nature, while the public need is more persuasive. *See United Prop. Owners Ass'n of Belmar v. Borough of Belmar*, 777 A.2d at 962 (finding that plaintiffs' interest in summer rentals was in maximizing profit and concluding that an Ordinance's occupancy restrictions on summer rentals did not violate New Jersey's equal protection clause). Accordingly, the Borough's Motion to Dismiss is **GRANTED** as to Plaintiffs' New Jersey equal protection claim.

### E.   FAIR HOUSING ACT

Next, the Court moves to Plaintiffs' FHA claim. Plaintiffs allege that the Ordinance violates the FHA because it "improperly prohibits, limits and/or discriminates against short-term rentals on the basis of familial status, that is, renters who may not be related to owners of the property or to each other." (FAC ¶¶ 91, 109.) Defendants move to dismiss Plaintiffs' FHA claim on the basis that the short-term rentals at issue in this case do not constitute "dwellings" within the meaning of the FHA. (Def. MTD at 27–28.)

The FHA makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The FHA defines "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families." *Id.* § 3602(b). The FHA does not define "residence." Where an act provides no statutory definition, "it is appropriate to assume that the ordinary meaning of the language that Congress employed 'accurately expresses the legislative purpose.'" *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164

(1985) (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 195 (1985)). Relying on the definition of "residence" found in Webster's Third New International Dictionary,[14] the Third Circuit has held that "the central inquiry" in whether a property constitutes a residence within the meaning of the FHA is (1) "whether the [plaintiffs] intend to remain in the [property] for any significant period of time" and (2) "whether they view [the property] as a place to return to." *United States v. Columbus Country Club*, 915 F.2d 877, 881 (3d Cir. 1990).

In *Columbus Country Club*, the Third Circuit applied this framework to determine that summer bungalows constituted dwellings under the FHA. The country club, which was formed by the Knights of Columbus, a Roman Catholic men's organization, leased bungalows to annual members. *Id.* at 881. The club had a policy of prohibiting the rental of bungalows to non-Catholics and contended that the bungalows were not dwellings under the FHA because they were not capable of being occupied as year-round residences. *Id.* at 880. First, the Third Circuit determined that annual members were not "mere transients" and intended to spend a significant period of time at their bungalows, citing the fact that members generally spent five months each year in their bungalows. *Id.* at 881. Second, the Circuit considered that nearly all annual members returned to their bungalows each summer. Indeed, the Court pointed out that, in twenty years' time there were only thirty-one (31) transfers of ownership within the community of forty-six (46) bungalows. *Id.*

In its decision on Plaintiff's OTSC, the Court determined that Plaintiffs were not likely to succeed on their FHA claim because Plaintiffs did not allege that their properties are "being used by renters for long-term stay[s] such that they could be considered the renters' residence." (OTSC Op. at 36.) Indeed, the Court pointed out that Plaintiffs argue that the Ordinance's "most offensive

---

[14] Webster's Third New International Dictionary provides that a residence is: "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." *Columbus Country Club*, 915 F.2d at 881.

provision to the FHA is the 7-day short-term rental requirement." (*Id.* at 36 n.10.) Thus, the Court determined, Plaintiffs' short-term rental properties do not constitute dwellings under the FHA. (*Id.* at 36.)

Plaintiffs did not allege any additional facts in support of their FHA claim in their Amended Complaint. Nonetheless, in their Brief in Opposition to the Borough's Motion to Dismiss, Plaintiffs cite *Lakeside Resort Enterprises, LP v. Board of Supervisors of Palmyra Township*, for the proposition that a property where occupants intended to stay for thirty (30) days or more which offers a "home-like" setting is a dwelling under the FHA. (Pls Opp. at 25–27 (citing *Lakeside*, 455 F. 3d 154 (3d Cir. 2006).)

In *Lakeside*, the Third Circuit considered whether a drug and alcohol treatment facility qualified as a dwelling under the FHA. *Lakeside*, 455 F. 3d at 154. The Court first considered whether the facility was intended or designed for occupants to remain for a significant period of time. *Id.* at 158. The Court explained that the average stay at the proposed facility was 14.8 days, but that length results chiefly from caps on health-insurance funding. *Id.* The Court explained that the "short, funding-limited, average stay is not dispositive" because the relevant inquiry is whether the facility is "designed or *intended* for occupancy as, a residence." *Id.* at 158–59 (emphasis in original). In *Lakeside*, the facility was intended to accommodate 30-day stays as a matter of course and longer stays on occasion. Thus, the drug and alcohol facility met the first factor of the Third Circuit's test. Next, the Third Circuit considered whether the occupants viewed the facility as a place to return to. The Court considered that the residents would "eat meals together . . . , return to their rooms in the evening, receive mail at the facility, and make it their 'residence' while they were there." *Id.* at 159–60. The Court also considered that residents "hung pictures on their walls and had visitors in their rooms." *Id.* at 160. In all, the residents "treated [the facility] like a home

for the duration of their stays." *Id.* The Court concluded that the facility "satisfies (though barely) the second factor" of the Third Circuit's test. *Id.*[15]

The Court finds the short-term rental properties at issue in this case distinguishable from the other properties that the Third Circuit has found to be dwellings under the FHA. Plaintiffs' short-term rental properties appear to be expressly *not* intended for occupancy for a significant period of time. While Plaintiffs argue that their properties are "designed and capable of housing occupants for an indeterminate period of time," (Pls. Opp. at 26), such argument is not convincing. The crux of this litigation is Plaintiffs' challenge to the Ordinance's regulations on *short-term* rentals. Plaintiffs take particular issue with the Ordinance's prohibition for non-resident owners on rentals for less than seven (7) days during the summer season. There are numerous references in the Amended Complaint to Plaintiffs' desire to rent their properties on a short-term basis,[16] and no allegations that suggest Plaintiffs intend to rent their properties for significant periods of time. (*See, e.g.*, FAC ¶ 7 ("the Borough has traditionally included private residences rented on a weekly or other short-term basis"); *id.* ¶ 106 ("Defendants have allowed residents of the Borough to rent their properties as 1-3 day weekend rentals" while denying non-residents same)). Moreover, the basis of Plaintiffs' as-applied *ultra vires* challenge is that the Ordinance requires a new inspection and new rental license upon each change in tenancy, but it takes up to thirty (30) days for inspections to be conducted and new licenses to be issued, making it impossible to rent properties for less than approximately thirty (30) days. (*Id.* ¶¶ 43, 73.) Against this backdrop, it strains

---

[15] The Third Circuit has also determined that nursing homes are dwellings, reasoning simply that "[t]o the handicapped elderly persons who would reside there, [the facility] would be their home, very often for the rest of their lives." *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1102 (3rd Cir. 1996).

[16] In fact, Plaintiffs refer to "short-term" rentals over thirty (30) times in the Amended Complaint. (*See generally* FAC.)

credulity for Plaintiffs to argue for purposes of their FHA claim that their short-term rental properties are designed and intended for occupancy for a significant period of time.

Even if the Court were persuaded that Plaintiffs properties are intended for longer-term use, the Court also finds that Plaintiffs fail to meet the second prong of the Third Circuit's "dwelling" test. Plaintiffs contend that their properties should be considered "a place to return to" because they provide a "home-like" setting. (Pls. Opp. at 26–27.) However, the inquiry is not whether Plaintiffs' properties are "home-like." The inquiry is whether the tenants see and treat the properties *as their homes*. For example, for elderly persons residing at a nursing facility, the facility "would be their home," *Hovsons*, 89 F.3d at 1102, and for club members leasing summer bungalows, they returned to their bungalows summer after summer and saw them as homes, *Columbus Country Club*, 915 F.2d at 881. A drug and alcohol treatment facility only "barely" met the second factor even though residents did things like received mail at the facility and hung pictures on their walls. *Lakeside*, 455 F.3d at 159. By contrast, Plaintiffs expressly allege that they "purchased residential properties within the Borough for the purpose of renting their properties to *tourists*." (FAC ¶ 7 (emphasis added).) Tourists cannot be said to include persons who treat their accommodations as their homes. While the Court accepts that Plaintiffs' properties have a "home-like" atmosphere, there are no allegations that tourists return to Plaintiffs' properties summer after summer or view the Plaintiffs' properties as their homes. *See Weisenberg v. Town Bd. of Shelter Island*, 404 F. Supp. 3d 720, 729 (E.D.N.Y. 2019) (finding that short-term rentals that were rented for no more than two weeks at a time where there were no allegations that they "were intended for use as actual residences by renters" were not dwellings under the FHA). Accordingly, the Borough's Motion to Dismiss is **GRANTED** as to Plaintiffs' FHA claim.

F.      DORMANT COMMERCE CLAUSE

Finally, the Court will address Plaintiffs' new challenge brought under the dormant Commerce Clause. Plaintiffs allege that the Ordinance "discriminates against, and places an excessive burden upon, interstate commerce by producing differential treatment of in-state and out-of-state owners of short-term rental properties, in a manner that benefits local owners and burdens out-of-state owners, such as Plaintiffs, in violation of the dormant Commerce Clause." (FAC ¶ 96.) Specifically, Plaintiffs allege that the Ordinance's exceptions for owner-occupiers and Borough residents found in Sections 13-14.5 and 13-14.6 facially discriminate against out-of-state owners. (*Id.* ¶ 100.) According to Plaintiffs, the ordinance does not permit out-of-state owners of rental properties in the Borough "to enter the Borough's short-term rental market on the same terms as residents of the Borough . . . ." (*Id.* ¶ 102.) Thus, by discriminating against out-of-state owners, the Ordinance constitutes a "*per se* violation" of the dormant Commerce Clause. (*Id.* ¶ 97.) Moreover, Plaintiffs allege, the Ordinance "does not advance any legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives," especially in light of the Borough's other ordinances that already "regulate nuisance or 'animal house' properties." (*Id.* ¶ 103.)

The Commerce Clause provides that the United States Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, sec. 8, cl. 3. "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a negative aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 98 (1994) (internal quotation marks and citations omitted). This doctrine, referred to as the dormant Commerce

Clause, "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273 (1988).

The Supreme Court has established two principles that govern a state's authority to regulate interstate commerce: (1) state regulations "may not discriminate against interstate commerce"; and (2) state regulations "may not impose undue burdens on interstate commerce." *S. Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2090–91 (2018). Measures that discriminate against interstate commerce face a "virtually *per se* rule of invalidity." *Id.* at 2091; *see also Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 35 F.3d 813, 823 (3d Cir. 1994) ("[W]hen a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [courts] generally str[ike] down the statute without further inquiry."). A law that discriminates against interstate commerce is constitutional only if its legitimate purpose "cannot be adequately served by reasonable nondiscriminatory alternatives." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008). By contrast, where a measure "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). This more relaxed standard for non-discriminatory measures is also referred to as *Pike* balancing. *See, e.g.*, *Cloverland–Green Spring Dairies, Inc. v. Penn. Milk Mktg. Bd.*, 298 F.3d 201, 211 (3d Cir. 2002).

Recently, in *National Pork*, the Supreme Court clarified its dormant Commerce Clause jurisprudence. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023). The Supreme Court explained that "state laws offend the Commerce Clause when they seek to build up . . . domestic

commerce through burdens upon the industry and business of other States . . . ." *Id.* at 369 (cleaned up). "This antidiscrimination principle is at the heart of most dormant Commerce Clause challenges, and it follows from this principle that 'regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors' are prohibited under the dormant Commerce Clause." *Def. Distributed v. Platkin*, No. 21-9867, 2023 WL 6389744, at *14 (D.N.J. Sept. 29, 2023) (quoting *Nat'l Pork*, at 369).

Plaintiffs challenge the Ordinance's exceptions for both residents and owner-occupiers. Turning first to the Ordinance's exception for Borough residents, the Borough concedes that this exception "is arguably discriminatory against those who []reside in another State." (Def. MTD at 31.) The Court agrees that Plaintiffs have adequately pled that exception which allows Borough residents—but not non-Borough residents—to rent their homes on a short-term basis discriminates against out-of-state owners. Thus, the exception is unconstitutional unless the Borough's legitimate purpose cannot be served by any adequate nondiscriminatory alternatives.[17]

The Borough does not provide any caselaw in support of their argument that measures similar to the residency exception at issue in this case have been found to pass constitutional muster in the face of Commerce Clause challenges. Absent legal authority provided by the Defendants, the Court cannot conclude that a regulatory provision that the Borough concedes is discriminatory on its face, and therefore is virtually *per se* unconstitutional, should be dismissed at this stage.

Plaintiffs have pointed to two cases that the Court finds instructive, albeit not binding on the Court. First, in *Hignell-Stark v. City of New Orleans*, the Fifth Circuit considered a challenge to New Orleans' regulation of short-term rentals. 46 F.4th 317 (5th Cir. 2022). In 2019, in response

---

[17] The Court notes that this standard is much more stringent than the deferential rational basis review that the Court applies to an equal protection challenge where no fundamental right or protected class is alleged, *see supra*, under which a statute will be found constitutional unless its means bear no rational relationship to its legitimate purpose.

to concerns that the proliferation of short-term rentals had brough nuisances, including noise and trash, to the City and reduced residents' quality of life, New Orleans imposed a residency requirement for short-term rentals in residential neighborhoods; the regulation provided that no person may obtain a license for a short-term rental unless the property was the owner's primary residence. *Id.* at 321. A group of plaintiffs challenged the regulation on a number of bases, including the dormant Commerce Clause. *Id.* at 325.

First, the Fifth Circuit held that the residency requirement discriminates on its face against out-of-state property owners. *Id.* at 326. Thus, the Circuit considered whether the regulation's purpose could be served by reasonable nondiscriminatory alternatives. *Id.* at 328. The court found that there was "no question" that "preventing nuisances, promoting affordable housing, and protecting neighborhoods' residential character" are "legitimate local purposes." *Id.* However, the Court found that these objectives could have been adequately served by reasonable nondiscriminatory alternatives. For example, as to the City's concerns with nuisances, the court noted that the City could step up its enforcement efforts, increase taxes on short-term rentals, or give short-term rental owners the alternative of employing an on-site operator; as to preserving affordable housing, the City could reduce the demand for housing in other ways or increase housing supply; and as to preserving the residential character of neighborhoods, the City could implement an overall cap on the share of housing units that can be used as short-term rentals. *Id.* at 328–29. Because there were adequate alternatives to the discriminatory regulation, the *Higley* Court concluded therefore that the regulation violated the dormant Commerce Clause.

The Court acknowledges that the Ordinance in this case is not as stringent as the regulation at issue in *Higley* in that it does not wholly prevent non-residents from entering the short-term rental market; rather, it prevents non-residents from entering the short-term rental market on the

same terms as residents. However, that is not the inquiry. The inquiry is whether there are *any* adequate and non-discriminatory alternatives that serve the Borough's legitimate purpose of preserving the quality of life in the Borough's residential neighborhoods and reducing public nuisances typically associated with frequent rentals and transient guests. The Court does not find as a matter of law at this stage that no adequate alternatives exist.[18]

Second, Plaintiffs cited *Colon Health Centers of America., LLC v. Hazel* for the proposition that, even if the Court were to find that the Ordinance regulates even-handedly and thus *Pike* balancing applied, the fact-intensive character of the *Pike* balancing test counsels against dismissal at this stage. 733 F.3d 535 (4th Cir. 2013). In *Colon Health Center of America*, the Fourth Circuit held that the *Pike* inquiry is a "fact-intensive" one which "counsels against a premature dismissal." *Id.* at 546. The Court explained that "in order to survive a motion to dismiss, plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The Fourth Circuit thus concluded that the district court erred in dismissing the plaintiffs' dormant Commerce Clause claim. *Id.*

The Court agrees that Plaintiffs' dormant Commerce Clause claim would benefit from further factual development and that dismissal at this stage may be premature. Plaintiffs have alleged enough facts to raise a non-speculative right to relief under the dormant Commerce Clause. Because the Court finds that Plaintiffs have adequately pled a dormant Commerce Clause claim

---

[18] While Defendants state in passing that the provision should be sustained because no adequate nondiscriminatory alternatives exist, they do not actually raise arguments that pertain to same. Rather, Defendants argue (1) the number of individuals affected by the provision is very small, and (2) unlike New Orleans, the Borough is only one square mile and has over five hundred (500) hotel rooms and thus the burden the Ordinance places on interstate commerce is minimal. (Def. MTD at 36–37.) These arguments are inapposite to whether a discriminatory measure may be sustained under the Commerce Clause. It bears repeating that the central inquiry is whether there are adequate nondiscriminatory alternatives to the Ordinance's measures. The Borough has failed to argue that no such alternatives exist.

pertaining to the Ordinance's exception for residents, the Court finds it unnecessary at this stage to determine whether the Ordinance's exception for owner-occupied units also raises constitutional concerns under the Commerce Clause. Accordingly, the Borough's Motion to Dismiss is **DENIED** as to Plaintiffs' dormant Commerce Clause claim.

IV.    **CONCLUSION**

For the foregoing reasons, the Borough's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The Borough's Motion is **GRANTED** as to Plaintiffs' facial ultra vires, procedural due process, equal protection, and FHA claims. These claims are **DISMISSED** without prejudice. The Borough's Motion is **DENIED** as to Plaintiffs' substantive due process, NJLAD, NJCRA, as-applied ultra vires, and dormant Commerce Clause claims. An appropriate Order accompanies this opinion. Plaintiffs may file an amended pleading that cures the deficiencies identified in this Opinion within thirty (30) days of the date of this Opinion and accompanying Order.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: January 26, 2024